**ADVENTURES IN GOOD EATING, Inc., v. BEST PLACES TO EAT, Inc.**

No. 8032.

Circuit Court of Appeals, Seventh Circuit.

Nov. 12, 1942.

Rehearing Denied Dec. 19, 1942.

Wm. Cyrus Rice, of Grand Rapids, Mich., and Charles W. Rummler and Julian C. Ryer, both of Chicago, Ill., for appellants.

Delbert A. Clithero, Carlton L. Fischer, Herman A. Fischer, and Raymond P. Fischer, all of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

A copyright infringement suit is before us. Defendants were enjoined from selling their book "Best Places to Eat" because the court found it to be an infringement of the plaintiff's copyrighted book "Adventures in Good Eating." Both books were compilations of choice restaurants located throughout the United States, and were made to aid travelers, of whom there are (or were) many, who appreciate good eating places.

The decree of the District Court adopted the report of a master, and provided, in addition to the injunction and provision for

destruction of existing copies, for the recovery of damages, master's fees, and attorneys' fees totaling $5,915.50 [1] from both the corporate defendant, and Mr. Barrett, its president and majority stockholder. The defendant, Illinois Automobile Club, of which Mr. Barrett was also president, was dismissed from the suit.

Appellants raise several minor and hypertechnical questions relative to copyright law, but the more substantial ones relate to the soundness of the finding of infringement, the liability of the corporate officer for the torts of the corporation allegedly his instrumentality, and the propriety of a reference and the cost thereof.

The Facts. The plaintiff's book is a small paper manual of less than three hundred pages, listing some 1400 eating places. It retails for $1.50 and about 180,000 have been sold. There have been eight editions. Defendants' book is of the same style, containing twenty-five less pages. They have published one edition of about 10,000 copies of which 3,500 have been sold at fifty cents a copy.

Defendant Barrett was president of the Illinois Automobile Association, which is a non-profit corporation. He decided to organize a corporation for profit, to edit and publish a book which would catalogue dining places throughout the United States. The book was to be sold to the members of the Automobile Association, and to the public generally. He organized the defendant corporation to effectuate this objective, with a capital stock of $1,000, of which he held sixty shares, his daughter, thirty shares (which he paid for), and a third person held ten shares. The new corporation occupied a room in the Automobile Club's building, rent free.

■ Infringement. Mr. Barrett hired a Mr. Cox, who wrote the copy for the book. Another employee was a typist. Both Mr. Cox and the typist (and Mr. Barrett) testified. Mr. Cox admitted that on the second day of his employment, at dinner, Mr. Barrett showed him a copy of plaintiff's book. The typist stated she saw a copy of plaintiff's book on Cox's desk, a couple of times. Other than that, there was no direct evidence which might bear on actual copying. Cox testified that Barrett handed him much material, including menus, memos of a

salesman by the name of Goodman, who allegedly had extensive experience in traveling in the New England states, for which memos Barrett paid Goodman, $100. Goodman did not testify. Cox and Barrett both stated the copy or manuscript could not be located to verify the originality of the work. Cox stated he asked for it at the office, but being no longer in the defendant's employ, he had no right to search for it. Barrett stated a search had been made, but the copy could not be found.

Infringement must then be determined by an examination of the books themselves. The master did this, picking at random several quotations from plaintiff's book, 1936 edition, locating the analogous quotation in defendant's book, and placing them in parallel position, for comparison. The master found them to be sufficiently alike to constitute plagiarism, and the trial court made a finding of fact that the defendants' book was "to a substantial and material degree, copied from plaintiff's copyrighted book, and particularly from the 6th and 7th editions thereof, and that said book 'Best Places to Eat from Coast to Coast' infringes the copyrights of the plaintiff's said book."

In reviewing this finding we have very carefully examined the two books, and conclude the finding is fact supported. The books bear a resemblance to each other, and the phraseology in many instances is strikingly similar. Defendants seek to explain the similarity in wording as the logical result of the copying by both plantiff and defendants of menus supplied by the restauranteurs listed in the books—that naturally and inevitably the same listing of prices, of specialties in food, and unusual features of the respective places would occur when the menus were used as source material in making up the copy. We are not convinced that this suggestion would explain the existence of such close and parallel wording, and especially would it not explain the substantially same selection of places listed in the respective books.

■ As corroborative on this finding of infringement was the existence of common errors in both books,—of telephone numbers, locations, etc. This matter of common errors is, of course, strong evidence of actual copying. Identical errors are not, without explanation of their source, to be

---

[1] $3,500 damages and $1700 attorneys' fees. A concurrent order provided for the taxing of $715.50 against defendants, $600 of which were for the master's fees, and $132.50 for court reporter (of which defendant had paid $17).

taken merely as a happenstance or an innocent coincidence. Of course, if it be shown that the common error arose from misstatement by a source available to all, no unfavorable inference may be drawn from the common error. Defendants, here, chose not to enlighten the court as to the origin of the errors, but have availed themselves of technical objections to the manner in which common error was attempted to be established,—to-wit, by the Request for Admissions.

■ The plaintiff filed a "Request for Admission of Fact, etc., Under Rule 36 of the Rules of Civil Procedure." Defendants made no reply to this request for admissions, and the trial court accepted the statements in the request, pursuant to Rule 36 of the Rules of Civil Procedure, 28 U. S.C.A. following section 723c.

Rule 36 provides that:

"At any time after the pleadings are closed, a party may serve upon any other party a written request for the admission by the latter of the genuineness of any relevant documents described in and exhibited with the request *or of the truth of any relevant matters of fact set forth therein.* * * * *Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request,* not less than 10 days after service thereof or within such further time as the court may allow on motion and notice, *the party to whom the request is directed serves upon the party requesting the admission a sworn statement either denying specifically* the matters of which an admission is requested *or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters.*"

To illustrate,—it was stated, "The telephone number of the White Fence Farm, Lemont, Illinois, is not and has never been 'Lemont 267,'" as both plaintiff's and defendants' books stated it to be. Other erroneous statements were of quite similar nature. Defendants were asked to admit the correctness of these statements. They declined to answer.

Defendants here argue that the request was not in proper form, and that plaintiff had the burden of proving that the telephone number had never been the number stated. The contention is without merit. If defendants object to the form of a request for admission they may seek relief from the trial court, or if they think the admission asked of them is without their knowledge to give, they may so state. But silence was here tantamount to an admission and is admissible to prove the fact here sought to be established,—namely, identical error appearing in a new book, and existing in the previously-published copyrighted book. The request for admissions would indicate that there were at least 21 identical errors in the two books. Obviously this corroborative evidence carried great weight.

■ *Issues pertaining to copyright law.* (1) *Validity of Plaintiff's copyright.* Defendants assert that plaintiff's proof is inadequate in respect to originality of material copyrighted. The certificates of copyright were introduced in evidence, and stated that Mr. Hines was the "Author." The statute provides, 17 U.S.C.A. § 55 that "Said certificate shall be admitted in any court as prima facie evidence of the facts stated therein." Defendants' answer denied that "Hines created and wrote such literary work and that the same is an original literary work." While we do not believe that mere denial is itself enough to overcome the prima facie weight of evidence which the statute gives to the certificate, and to shift the burden, we need not determine that question because Mr. Hines himself testified as to the originality of his book as follows:

"Q. Who compiled the material that is included in the directories? A. The material is compiled in my office. The material is written by me. Q. Who collects the material? A. It is collected by sending out inquiry blanks, or so-called questionnaires, or it comes from many eating places who solicit a listing in my book, or it comes from people I know. * * *. Q. Do you compile any of that material yourself? A. Oh, yes. * * * I generally plan to stop and eat at places that are recommended by a great many people, to ascertain if I think they qualify for a listing in my book."

It would be self-evident that a manual listing any particular kind of place might not be an original thought—in fact, the statute, Sec. 5, 17 U.S.C.A. makes a specific classification of "directories, gazetteers, and other compilations."

Originality in the compilation of a directory does not mean an entirely new conception of a directory. Any person may produce a directory of restaurants, but he must "start from scratch," do his own col-

lecting, his own appraisal, and his own description and editing.

Defendants adduced no evidence to contradict the originality of plaintiff's work.

■ Not only the copyright is proved by the certificate to be prima facie valid, but the evidence supports the presumption[2] which the certificate of copyright, created.

■■ (2) Defendants next complain because plaintiff failed to state which of the eight editions were infringed, and finally to set forth the passages of which it complained. They also complain that "a series of certificates of registration of claim of copyright for unspecified portions of the material appearing in the latest of several revised and enlarged editions of a book is not sufficient proof that a valid copyright exists in all of the material appearing in the latest edition of the book without further evidence that all of the material in the book is in fact copyrighted."

An editor may procure successive copyrights on the same book, where he has materially revised it. Moreover, the master here, in making his finding, specifically stated it was the sixth and seventh editions with which he was making his comparison to determine the existence of infringement, and for which he found infringement. Again, since successive copyrights are permissible,[3] to cover new material in the same book, and since the statutory term for a copyright had not expired on any of the editions, defendants could not escape the charge of infringement. The copyright covers the whole of the book, and the later copyrights cover the supplemental material only, and not the earlier. There can not be two copyrights on the same material. The contention that the material found to be infringed in the sixth and seventh editions, may have been covered by one of the first five copyrights, we believe to be frivolous. Since some copyright covered every part of the book, some one of plaintiff's copyrights was necessarily infringed, if there were parts copied.

*Personal Liability of Barrett for Judgment.* Defendant Barrett complains that he is not liable for the judgment based on the alleged tort of the corporation of which he was president. His position is that he had little or nothing to do with the book,— that the work of writing and editing it was done by the corporate employees, Cox and Guthrie. The latter, it seems, materially changed the copy submitted by Cox, as to grammar, spelling, etc. In fact, Barrett claims the only thing he did was to send a wire to proceed with the printing of the final galley which had been sent to him.

This leaves out several facts. Barrett (a) organized the corporation, (b) paid for nearly all of its outstanding stock, (c) lent it substantial sums when it was in need of money, (d) gave Mr. Cox material with which to begin the book, (e) showed Mr. Cox a copy of the plaintiff's book, (f) passed upon original copy of the directory for a few of the states, (g) made numerous calls upon Mr. Cox at the defendant corporation's office, relative to the book.

The master found:

"It is clear that the defendant corporation was Barrett and that Barrett was the defendant corporation. * * * He controlled, directed, and participated in the infringement. I conclude that Carl A. Barrett is liable for infringement." [4]

■ The District Court's acceptance of this finding must be accepted by us, for substantial evidence supports it.

■ The rule announced by this court, in Dangler v. Imperial Machine Co., 11 F.2d 945, 947,[5] we adhere to. There, we said

---

[2] See Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 4 S.Ct. 279, 28 L. Ed. 349; 34 Amer.Juris., Literary Property and Copyright, Sec. 44, 42. Sec. 12.

[3] Sec. 29, Amer. Juris. Literary Property and Copyright:

"Although the same work is not entitled to more than one copyright, compilations, adaptations, translations, or new editions of copyrighted works may be themselves copyrighted. The copyright of a new edition, however, covers only new matter contained in it. A copyright obtained by an author subsequent to publication gains no additional support from the fact * * *."

Sec. 6, 17 U.S.C.A. "Compilations * * * or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title."

[4] See Fletcher on Corporations, Secs. 2535, 2536.

[5] General Motors Corp. v. Provus, 7 Cir., 100 F.2d 562; Southwestern Tool Co. v. Hughes Tool Co., 10 Cir., 98 F.2d 42; Claude Neon Lights, Inc., v. American Neon Light Corp., 2 Cir., 39 F.2d 548; Schiff v. Hammond Clock Co., 7 Cir., 69 F.2d 742.

"It is when the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability—that officers are held jointly with the company. The foregoing are by no means cited as the only instances when the officers may be held liable, but they are sufficient for the present case."

 The master's report shows he understood the proper rule and applied it. The conclusion he drew from the evidence is one which was well nigh inescapable. It was strengthened by the approval of the district judge.

 *Damages and Attorneys' Fees.* Damages were fixed at $3,500, and attorneys' fees at $1,700. Both findings are supported by substantial evidence.

Had the damages been more (or even less), we would still feel compelled to accept them. In other words, the damages are not capable of ascertainment with mathematical certainty. The trier of facts made these findings, and we are not justified in modifying them, unless satisfied that they are outside the range of permissible or sane judgment.

That plaintiff, with a large and growing list of epicurean followers, has support for its claim of substantial damage by defendants' publication, where the same list is sold for one-third (50c) of what plaintiff sells its book,—is clear. Plaintiff could not assert the superiority of its list and thereby avoid defendants' lower price competition, because defendants have practically the same names and places. Plaintiff's book, therefore, was in direct competition with defendants' book, the sales price of which was far less. Damages to a business like plaintiff's which showed sales of 180,000 volumes at $1.50 per volume, were, obviously, substantial.

 As to attorneys' fees, it is apparent that a considerable part of the amount allowed could have been avoided,

had defendants complied with the Rules of Civil Procedure in the spirit in which they were intended. In other words, they could have admitted certain facts and thereby shortened the trial and lessened the work of plaintiff's attorneys. While it is true that the time consumed would also have been less had the court not improperly referred the case to a master, we are not prepared to reduce the amount. A finding of fact, which involves judgment and discretion, is reviewable on appeal, but the inquiry is a limited one. It is not a trial de novo.

*Master's Fees.* The court allowed fees to the master in the sum of $600, to which was added $115.50 for stenographer's compensation. There can be no doubt as to the reasonableness of this allowance. The charges were modest.

However, there is a question as to who should pay them.

The defendants objected to the reference. Over their objection, the court directed a reference and a trial by a special master. Our first question is as to the propriety of this reference. Rule 53(b) [6] governs.

The District Court seemed to labor under the impression that the words "exception" and "exceptional" as used in this rule, are elastic terms, with it the sole judge of their elasticity. Such a construction, we can not accept.

From our study of the record before us, we are unable to find any exceptional conditions such as the rule (Rule 53(b) of the Rules of Civil Procedure) contemplates as a prerequisite to a reference. In fact, the opposite appears. We are convinced that a case which required but a few hours' oral testimony should have been heard by the trial court instead of being referred to a master and heard piecemeal, on five different occasions, over a period of three months.

Only one case has reached the Supreme Court since Rule 63(b) was promulgated. This was McCullough v. Cosgrave, Judge, 309 U.S. 635, 60 S.Ct. 703, 84 L.Ed. 992. The per curiam opinion is short, but an examination of the records of the Supreme Court shows that the order of reference

---

[6] Rule 53(b) "*Reference.* A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it."

was made because of the asserted illness of the District Judge. It also appeared that all parties desired an early hearing, and the case had been pending for a long time. Moreover, the calendar was congested, and no other judge was available to try the case within a reasonable time.

The foregoing factual situation was conceded, and a reference was ordered. The Supreme Court, however, directed the judge to vacate the order of reference, citing Rule 53(b). The case presented a fact situation which supplied a stronger basis for reference than the one before us.

The instant suit involved two controverted questions: (a) Liability of defendants for infringement of plaintiff's copyrighted book; and (b) damages. As a matter of fact, the second question required almost no evidence. It did not involve an accounting. As to the question of defendants' liability, it is estimated that a trial of six or eight hours would have finished the taking of testimony.

Litigants are entitled to a trial by the court, in every suit, save where exceptional circumstances are shown. It is a matter of common knowledge that references greatly increase the cost of litigation and delay and postpone the end of litigation. References are expensive and time-consuming. The delay in some instances is unbelievably long. Likewise, the increase in cost is heavy. For nearly a century, litigants and members of the bar have been crying against this avoidable burden of costs and this inexcusable delay. Likewise, the litigants prefer, and are entitled to, the decision of the judge of the court before whom the suit is brought. Greater confidence in the outcome of the contest and more respect for the judgment of the court arise when the trial is by the judge.

We are convinced that the defendants' objection to the reference should have been sustained. The case is a clear one against reference. The plaintiff having asked for a reference, and the court having granted it on plaintiff's motion, the costs of such reference should be charged to the plaintiff. It was not the master's fault that he was called to hear the controversy. He performed his duty. It was the court's error, provoked by plaintiff's motion, that brought about the reference.

The decree is modified by directing that the costs of reference in the sum of $715.-50 shall be paid by the plaintiff and not charged against the defendants. In all other respects, the decree is affirmed. Each side will pay its own costs on this appeal.