JOHNSON FARE BOX COMPANY, a Delaware Corporation, Appellant,

v.

NATIONAL REJECTORS, INC., a Missouri Corporation, Appellee.

No. 16115.

United States Court of Appeals
Eighth Circuit.

Aug. 21, 1959.

Edward C. Threedy, Chicago, Ill. (Clarence E. Threedy, Bernard Hoban, Robert J. C. Damon, Chicago, Ill., Albert L. Jeffers, Fort Wayne, Ind., and Richard M. Stout, St. Louis, Mo., on the brief), for appellant.

Albert F. Mecklenburger, Chicago, Ill. (James R. Dowdall, Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., Walter R. Mayne, Fordyce, Mayne, Hartman, Renard & Stribling, and Rey Eilers, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, VOGEL and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by the plaintiff in a patent infringement action from a judgment dismissing its complaint.

The Johnson Fare Box Company, on February 3, 1954, brought this action for an injunction and damages against National Rejectors, Inc., which makes and sells "Simplex" coin changers, charging it with having infringed the claims of two patents owned by the plaintiff, namely, No. 2,555,486 issued to Charles F. Harris on June 5, 1951, covering a coin changer for vending machines, and No. 2,619,213 issued to Harris on November 25, 1952, for an antijackpotting device [1] for check or coin operated vending machines. The defendant, by amend-

---

[1]. A device to prevent the machine from continuing to make deliveries upon the deposit of a single coin, after one delivery of the article vended has been made.

ed answer filed December 22, 1954, denied infringement and asserted that the patents in suit were invalid for anticipation and want of invention. On September 19, 1956, the defendant filed a motion for a reference of the case to a Special Master for trial. The plaintiff resisted the motion. The District Court on September 26, 1956, after a hearing, granted the reference and appointed Mr. John H. Bruninga, of the St. Louis, Missouri, Bar, as Special Master to take and report the testimony, together with his findings of fact and conclusions of law thereon.

The case was tried to the Master from November 8 to November 21, 1956. His comprehensive, detailed, and painstaking report, which covers some 73 pages of the printed record, was filed June 3, 1957. He determined that Harris Patent No. 2,555,486 was invalid as to Claim 15 in suit and was not infringed by the defendant's accused device. The Master also determined that Harris Patent No. 2,619,213 was invalid as to Claims 22 and 24 thereof, because anticipated by Hartman Patent No. 1,586,950 for a popcorn vending machine, and that it had not been infringed by the defendant. The Master recommended that the complaint be dismissed. On August 5, 1957, the plaintiff filed objections to the Master's report, challenging his findings and conclusions with respect only to Claims 22 and 24 of the Harris Patent No. 2,-619,213. The District Court on July 28, 1958, overruled the objections, confirmed the report, and adopted in full the findings and conclusions of the Master. Judgment dismissing the plaintiff's complaint "at plaintiff's costs" was entered July 29, 1958.

From this judgment "in so far as it relates to the validity and infringement of Patent No. 2,619,213 granted November 25, 1952 on an antijackpotting device for check operated vending machines and in so far as said final judgment awards costs to the defendant, and from the order for reference to a Special Master dated September 26, 1956," the plaintiff appeals.

Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. * * * *"

Rule 53(e) (4) states:

"The effect of a master's report is the same whether or not the parties have consented to the reference * * * *."

■ There is no merit in the plaintiff's contention that "The District Court erred in approving the report of the Special Master which omitted Findings of Fact and in entering a final judgment which referred to, but omitted, Findings of Fact." The voluminous and carefully considered report of the Special Master shows exactly what he found to be the facts relative to the issues in suit. The plaintiff in its objections to the report of the Master recognized that the report contained the Master's findings, by referring therein to "the findings and conclusions of the Master's Report" four separate times. That neither of the parties saw fit to submit "separate Findings of Fact," as the Master in his report stated might be done, has no bearing upon the adequacy of the findings and conclusions which the trial court has adopted, and which, unless clearly erroneous, support its judgment. So far as this Court is concerned, the report of the Master is now the opinion, the findings, conclusions and final decision of the District Court.

The question whether the District Court abused its discretion in referring the issues of fact and law to a Special Master for trial, over the objection of

the plaintiff, is, no doubt, debatable. Rule 53(b) of the Federal Rules of Civil Procedure provides:

"A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall be made only upon a showing that some exceptional condition requires it."

Judge Moore, the Chief Judge of the District Court, who granted the motion of the defendant for a reference, in his order stated that the dockets of the Court were extremely crowded due to the recent death of Judge Rubey M. Hulen (who had this case on his docket and had evidently intended to try it in the near future); that never before in Judge Moore's Division of the court had the docket been so congested; that only once before during his incumbency had he referred a case to a Special Master for trial, and then only because of the death of another member of the District Court; that he was informed that the instant case was more than usually complicated, and that it should be tried promptly and before the trial of a somewhat related case between the same parties pending in the Federal District Court in Chicago; that, although the trial of the instant case was tentatively set for October 22, 1956, it appeared that the condition of the Court's docket was such that sufficient time would not be available to complete the trial; that the public interest in the prompt dispatch of business, particularly of pending criminal cases, would be served by a reference; and that the Court was advised that the cost would not be an undue financial burden to either party. The Court ordered that the costs and expenses of the reference be borne initially by the parties in equal shares, but ultimately be taxed upon the further order of the Court.

 Whether the combination of circumstances referred to by Judge Moore constituted an adequate showing of an "exceptional condition" requiring

a reference, may perhaps be doubted. The Supreme Court has very definitely voiced its disapproval of referring all issues in a case to a special master for trial. See Los Angeles Brush Manufacturing Corp. v. James, 1927, 272 U.S. 701, 707, 47 S.Ct. 286, 71 L.Ed. 481; McCullough v. Cosgrave, 1940, 309 U.S. 634–635, 60 S.Ct. 703, 84 L.Ed. 992; La Buy v. Howes Leather Co., Inc., 1957, 352 U.S. 249, 253, 258–259, 77 S.Ct. 309, 1 L.Ed.2d 290. The sudden and unexpected death of Judge Hulen (who, no doubt, was carrying one-third of the case load of the Court on his docket), causing an unanticipated increase in the dockets of the two remaining members of the Court, would certainly constitute some justification for referring this complicated patent case to a Master for a prompt trial. Even if the order of reference was improvidently or improperly granted, that alone would not entitle the plaintiff to a reversal or affect the review of this case by this Court. If, however, it was error to refer the case, the costs of reference should be borne by the defendant, which induced the Court to make the order. See Adventures in Good Eating, Inc. v. Best Places to Eat, Inc., 7 Cir., 131 F.2d 809, 814–815. While this Court disapproves unnecessary references, we think that the District Court, under all the circumstances, did not abuse its discretion in granting a reference of this case, and that the defendant should not be required to bear the entire costs of the reference. There is, however, an element of unfairness in ordering the plaintiff, who opposed the reference, to pay the entire costs occasioned by it—this because there was not a convincing showing by the defendant that any serious prejudice would result to it if the motion was denied and the case tried by the Court in regular course. We think that, whatever the final outcome of the case may be, at least one-half the costs attributable to the reference should be borne by the defendant.

 It is apparent that, unless there is an inadequate evidentiary basis for the

determination by the Master and the Court that Claims 22 and 24 of Harris Patent No. 2,619,213 were invalid because anticipated by Hartman, and were not infringed by the accused device of the defendant, the judgment appealed from must be affirmed. The Master's report amply demonstrates that his determination was based upon no misconception of the applicable law and that he had a complete grasp of the issues of fact and law involved.

Claims 22 and 24 of Harris Patent No. 2,619,213 read as follows:

"22. In a control device, the combination of a starting circuit including a normally open, coin closed switch, a cycling mechanism, means responsive to the closure of the switch for starting and completing a cycle of the mechanism, means for reopening said switch before the completion of a cycle, normally ineffective testing means rendered effective by the cycling mechanism after the time for operation of the reopening means and at least once during each cycle, means having an effective condition for preventing a subsequent cycle of said mechanism and means, under joint control of said coin switch when it remains closed and said testing means when it is rendered effective, for rendering said preventing means effective."

"24. In a control device, the combination of a starting switch having effective and ineffective positions, a motor, means responsive to said switch, when it occupies its effective position, for starting the motor, means for thereafter restoring the switch to ineffective position, means for holding the motor energized for a cycle and for thereafter stopping it, a test switch having an effective and an ineffective position, means operable after said restoring means for moving said test switch to effective position and means, under joint control of said starting and test switches when both are in their ef-

fective positions, for preventing restarting of the motor."

The following language from the specification of the patent will give an idea of the coverage and meaning of the claims:

"This invention relates to an anti-jackpotting device for check operated vending machines. More specifically it relates to a device for preventing the dispensing of more than one article or portion even if the coin actuated impulse switch is held closed.

"A great many check or coin operated vending machines operate on the principle that the passage of an accepted check past an impulse type of switch creates an electrical impulse in a starting circuit to start a cycle of the machine which terminates in the delivery of one article or portion of a commodity.

"These machines are subject to the defect that if the impulse switch is held closed, either due to the sticking of the switch points, the jamming of the coin or for any other reason, the machine continues to cycle and dispenses the entire contents without collecting the sale price. Frequently, as in the case of a nonpackaged commodity such as a cup drink, the drink will continue to flow; and since there are usually no drain connections to such units, the fluid may run onto the floor and be lost or cause considerable damage to rugs, etc.

"To prevent such occurrences, which are usually termed 'jackpotting,' I have devised a mechanism which will, near the end of each delivery, automatically test a switch which will be closed if a multiple delivery is impending and if the switch is held closed, a mechanism will shut down the machine automatically. No further checks will be accepted and no product will be vended until the switch and the shut down mechanism have been manually cleared. This insures that no products will be dispensed without pay-

ment or will escape to create damage.

"It is also an object of the invention to provide a simple, inexpensive mechanism which can be applied to any switch operated vending machine.

\* \* \* \* \* \*

" \* \* \* The word check is used in the generic sense and includes coins, tokens, etc., it being understood that the machines may be operable by tokens, coins or any other actuator which will close a switch to effect a sale."

The evidence, aside from documents and exhibits, adduced before the Special Master was that of experts. The plaintiff's expert was Mr. Callard Livingston, a practicing patent attorney. He explained the subject matter of Harris Patent No. 2,619,213, and compared the defendant's accused device with Claims 22 and 24, respecting similarity of means and function. The defendant's expert was Dean Don A. Fischer of the Engineering School at Washington University of St. Louis, Missouri, who had familiarized himself with the file wrapper of the patent in suit, the patent to Hartman No. 1,586,950, issued June 1, 1926, other pertinent prior art patents, and the accused device. His testimony clearly tended to show that Claims 22 and 24 of the Harris Patent here in suit were invalid in view of the Hartman patent, and showed no patentable advance over the disclosure of that prior art patent.

Any attempt on our part to analyze, summarize, or discuss in detail the report, findings and conclusions of the Master and the evidence upon which they were based, would be more confusing than helpful. The evidence was convincing that Hartman in his Patent No. 1,-586,950 for "Pop Corn Vending Machine" disclosed means for opening of the main coin-operated circuit of his machine in case of an abnormal happening such as the "burning in of a coin, or the like," thus preventing the continued running or jackpotting of the machine, which means were the substantial equivalent of those disclosed by Harris in his patent in suit.

It is our opinion that, under the evidence, the Master and the District Court were fully justified in finding Claims 22 and 24 of Harris Patent No. 2,619,213 invalid. That being so, we find it unnecessary to express any opinion about the sufficiency of the evidence to establish noninfringement, for one cannot infringe an invalid patent.

The judgment appealed from is affirmed, but with directions that it be modified by requiring the defendant to pay one-half the costs directly attributable to the reference which it requested and obtained.