DECISION
Before the Court for decision is a Motion brought by The Sherwin Williams Company, NL Industries, Inc., and Millennium Holdings LLC (collectively, the Defendants) to Discharge Co-Examiners and for Final Determination of Compensation to Co-Examiners and the Plaintiff's (the State) response thereto. The Defendants request that the Court issue a final determination as to compensation of the Co-Examiners pursuant to ¶ 13(a) of the Court's June 18, 2007 Order. In particular, the Defendants seek an order (a) discharging the Co-Examiners from their duties and appointment and (b) requiring the State reimburse them for $218,270.64 already paid to the Co-Examiners and their assistants, as well as $15,554.75 in transcript fees and $8,295.82 in conference call fees incurred during the Co-Examiners' proceedings.
 I Facts and Travel
Upon conclusion of what is considered to have been the longest civil trial in Rhode Island history, a jury found that the cumulative presence of lead in paints and coatings on buildings throughout the State of Rhode Island constituted a public nuisance. See State v. Lead Indus.Ass'n, 2007 R.I. Super. WL 711824 (Feb. 26, 2007). In *Page 2 
accordance with the jury verdict, the Court entered judgment on March 16, 2007 against the Defendants for the abatement of that nuisance. Following the entry of judgment, the State implored the Court to immediately begin the abatement process and appoint examiner(s) to aid in the implementation of a complex remedial scheme. Despite a pending appeal before the Rhode Island Supreme Court concerning a number of pretrial, trial, and post trial orders — as well as the jury's verdict of abatement — the State stood firm with its requests for prompt action.
The Defendants countered the State's requests by moving the Court for a stay of abatement proceedings — including appointment of examiner(s) — while their appeal was pending before the Rhode Island Supreme Court. In support of their position, the Defendants maintained that "the Defendants' appeal presents complex liability issues of first impression and serious constitutional concerns that deserve appellate review before this Court moves forward with costly and potentially time-consuming remedial proceedings." (See Defendants' Memorandum In Support of Motionto Stay Abatement Proceedings Pending Appeal 1).
At the subsequent hearing on the Motion to Stay, the Defendants argued that due to the complex and costly nature of the abatement remedy, the best course of action would be to refrain from proceeding with implementation of that remedy until the Supreme Court had a chance to consider the pending appeal. (See 5/1/07 Hearing Tr. at 14). The Defendants also pointed out that appointing examiners and initiating fact-finding proceedings before the conclusion of the appeals process would "take an incredible amount of time and effort." (Id. at 10). Conversely, the State vehemently *Page 3 
argued for the Court to deny the request for stay and begin implementation of the abatement verdict without further delay. (Id. at 20).
At the same hearing, the Court, ostensibly concerned with the issue of cost allocation, probed the issue of cost and compensation of the examiners and inquired of the State as to what would happen should the Supreme Court decide to reverse the jury verdict. (Id. at 29). In response, the State argued that, at least preliminarily, the Co-Examiner fees should be borne by the Defendants. (Id. at 31). The State maintained that the party that lost at trial should be responsible for such expenses. (Id. at 30). Additionally, the State suggested that should the Supreme Court reverse the jury verdict and vacate the judgment of abatement, the Defendants could subsequently seek reimbursement for those fees as costs. (Id. at 31).
The Court proceeded to deny the Defendants' request for stay, and pursuant to Super. R. Civ. P. Rule 53 and the Court's inherent powers, entered an order on June 18, 2007 for the purpose of enumerating the powers, duties, and responsibilities of the Co-Examiners. However, in the order appointing the Co-Examiners, the Court declined to make a final ruling regarding responsibility for the Co-Examiner expenses. Instead, the Court decided to defer final determination of cost allocation until a later date, and ordered that "the Defendants shall initially be jointly responsible for payment of all fees, costs, and expenses associated with the Co-Examiner(s), and shall divide those costs in equal shares unless they agree or have agreed otherwise. Final determination of the responsibility for such costs shall be determined by the Court." (See 6/18/07 Order, ¶ 13(a) (June 18, 2007)). Thereafter, the Court entered an order on December 18, 2007 appointing Co-Examiners who proceeded to perform their duties until July 1, 2008, when *Page 4 
the Rhode Island Supreme Court rendered its decision on the Defendants' appeal reversing the jury verdict and vacating the judgment of abatement. State v. Lead Indus. Ass'n Inc., 951 A.2d 428 (R.I. 2008). Now that the Supreme Court has vacated the judgment of abatement and directed judgment in favor of the Defendants, the Defendants move this Court to make a final determination regarding allocation of the Co-Examiners' fees and expenses. Pursuant to Rhode Island Superior Court Rule 53, and ¶ 13(a) of the Court's June 18, 2007 Order, the Defendants seek reimbursement by the State of all fees and expenses associated with the Co-Examiners.
 II Standard of Review
Rhode Island Superior Court Rule of Civil Procedure 53 provides that "the compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties . . . as the court may direct." Super. R. Civ. P. Rule 53(a). Pursuant to this rule, the Court has provided that while the Defendants will be preliminarily responsible for payment of fees and expenses associated with the Co-Examiner(s), "the final determination of the responsibility for [co-examiner] costs shall be determined by the Court." (See 6/18/07 Order, ¶ 13(a)).
 III Analysis A Sovereign Immunity
In this matter, a threshold issue is whether an award of costs against the State is barred by sovereign immunity. The State essentially puts forth a twofold argument in support of its position. First, the State argues that only the General Assembly can waive sovereign immunity, and in instances where it does, the statutory language granting the *Page 5 
waiver must be interpreted narrowly. More specifically, the State maintains that when a statute waiving sovereign immunity is enacted by the General Assembly, the statutory language granting the waiver must be strictly construed, and the scope of the waiver will not extend beyond what is explicitly stated in the statute. Regan Construction Corp. v.Mayer, 712 A.2d 372, 373 (R.I. 1998) ("When a statute purporting to waive any aspect of the state's sovereign immunity is examined, the language of the statute must be closely parsed and strictly construed.") (citing Clark-Fitzpatrick v. Gill, 652 A.2d 440, 452 (R.I. 1994));see also Mulvaney v. Napolitano, 671 A.2d 312 (R.I. 1995) ("The Legislature did not intend to deprive the State of any sovereign power unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language.") (quoting Andrade v.State, 448 A.2d 1293, 1295 (R.I. 1982)); see also Andrade,448 A.2d at 1294 ("A statute waiving sovereign immunity, which is also in derogation of common law, must be strictly construed and whatever right of recovery is to be ascertained against the state must be expressly mentioned in the waiver of the immunity statute.") Secondly, the State contends that in situations where the Legislature has affirmatively waived the State's sovereign immunity so that aggrieved parties can pursue claims against the State — such as the State Tort Claims Act and the Government Tort Liability Act — courts have found that such a waiver does not extend to the assessment of costs against the State. Mulvaney, 671 A.2d at 313
("Because the Legislature has explicitly authorized only the award of damages, this court declines to expand the liability of the state and municipalities to include interest and costs."); see also L.A. RayRealty v. Town of Cumberland, 698 A.2d 202, 209 (R.I. 1997) ("We have also held that the Government Tort Liability Act compensates a plaintiff only for damages, and we have `decline[d] to *Page 6 
expand the liability of the state and municipalities to include interests and costs.") (quoting Mulvaney, 671 A.2d. at 313).
In the instant matter, however, the State is not being sued as a defendant under a specific statute. To the contrary, here, the State has voluntarily availed itself of the judicial system by initially filing this lawsuit as the plaintiff. The authority upon which the State bases its argument is inapplicable because it pertains to situations where the government entity has been sued as a defendant. For example, inMulvaney, L.A. Ray Realty, and Andrade, the government entity was a defendant, and the question became whether the waiver of sovereign immunity for damages under a particular statute extended to costs as well. In all three instances, the court determined that the waiver did not extend to costs. However, in the present situation, unlike that inMulvaney, L.A. Ray Realty, and Andrade, the State made a calculated decision to pursue litigation and is not a defendant who has been unwillingly drawn into the judicial process. Here, there is no statutory language to interpret because the State was not sued pursuant to a legislative enactment; the State is the party that initiated the litigation and invoked the power of the judicial system.
Continuing with this line of analysis, there is authority dating back over half a century that stands for the proposition that where a state voluntarily files an affirmative claim, as is the case here, the state waives its sovereign immunity. Once it waives its sovereign immunity, it may be subjected to costs in the same manner as any private litigant.See 72 A.L.R. 2d 1379, 1393-94 (1960, Supp. 2008); see also People v.Downs, 864 N.E.2d 320, 323 (Ill.App.Ct. 2007) ("The doctrine of sovereign immunity bars only actions brought against the State, not actions brought by the State."); In Interest of *Page 7 R.M.H., 843 S.W.2d 740, 742 (Tex.App.-Corpus Christi 1992) ("Generally, when the State enters the court as a litigant, it places itself on the same basis as any other litigant. * * * Ordinarily, in the absence of a statute exempting a governmental unit from the payment of court costs, it is just as liable as any other litigant."); Barr v. Game, Fish andParks Comm'n, 497 P.2d 340, 344 (Colo.App. 1972) (In affirming the award of litigation costs, the court reasoned, "where a state voluntarily becomes a litigant . . . the result . . . is that it waives its sovereign immunity from suit and may be subjected to costs in the same manner as a private litigant . . ."); Dade Co. v. Carter,231 So.2d 241, 242 (Fla.Dist.Ct.App. 1970) ("Where a state voluntarily becomes a litigant in its own courts, by bringing an action as the original plaintiff, it waives its immunity and may be subjected to costs in the same manner as a private litigant."); Glass v. Great Southern Life Ins.Co., 170 S.W.2d 247, 249 (Tex.App. 1943) (In assessing costs against the State, the court noted "it has been uniformly held that where the State enters the courts as a litigant it places itself upon the same basis as any other litigant and costs may be taxed against it.");Grand River Dam Authority v. Grand-Hydro, 111 P.2d 488, 489-90 (Okla. 1941) (Proclaimed state actor could not avail itself of judicial process, and, in the absence of legislation relieving it, escape the usual incidents of litigation — payment of costs — that fall upon private litigants.)
Additionally, as a matter of fundamental fairness, when a State voluntarily avails itself of the judicial system and brings an affirmative claim, the State should be subject to the same rules and regulations as private litigants.[1] Reata Constr. Corp. v. City ofDallas, *Page 8 197 S.W.3d 371, 375-76 (Tex. 2006) (In holding that the state waived sovereign immunity, the court noted "we believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity to the party's claims against it."); see also; Chicago, St. P., M. O. Ry. Co.v. Mundt, 229 N.W. 394, 395 (S.D. 1930) ("It seems to us the fair, just and reasonable rule that, when the sovereign submits itself to suit . . . it should come into court on the same basis as to liability for interests and costs, in the event of adverse decision, as any other suitor.") These cases stand for the proposition that if the State makes a calculated decision to pursue litigation, sovereign immunity should not subsequently be used as a shield to protect the State from compliance with adverse rules and regulations.[2]
When faced with analogous issues, the Rhode Island Supreme Court has concurred with the rulings of its judicial brethren, unequivocally holding that a *Page 9 
government entity waives its sovereign immunity protection by affirmatively engaging in litigation. See Capital Properties, Inc. v.State, 749 A.2d 1069, 1081 (R.I. 1999) (State waived sovereign immunity by asserting an affirmative claim under the Uniform Declaratory Judgment Act, "the State has brought this action under the Act and, thus, has waived sovereign immunity.") Moreover, the Rhode Island Supreme Court has also ruled that a government entity's sovereign immunity protection can be waived based on fairness grounds. Donnelly v. Town ofLincoln, 730 A.2d 5 (R.I. 1999). In Donnelly, the Town of Lincoln affirmatively agreed to participate in the workers compensation system, but proclaimed that sovereign immunity barred the assessment of prejudgment interest against a municipality. Id. at 9-10. The Supreme Court held otherwise, stating that because the municipality affirmatively decided to invoke the benefits of the workers' compensation system, it would be subject to all of the rules of that system, including the assessment of prejudgment interest: "There is ample evidence that the town waived sovereign immunity such that it would be vulnerable to an award of interest." Id.; see alsoPellegrino v. The Rhode Island Ethics Comm'n., 788 A.2d 1119, 1124 (R.I. 2002) (Interpreting Donnelly to have held that "a municipality voluntarily joined the state workers' compensation system and, in doing so, it received the advantages of participating therein. As a result . . . the town impliedly waived sovereign immunity and was not insulated from an award of interest . . .") The essential principle articulated inDonnelly — that if the government elects to participate in a particular system, as a matter of fairness, it participates in full — is directly applicable to the instant matter. Here, the State of Rhode Island made a calculated decision to enter the judicial system by asserting an affirmative claim against the Defendants. As a result of this voluntary choice, the *Page 10 
State effectively waived its sovereign immunity protection and should be subject to all of the rules and regulations of the judicial system just like any other litigant. See Capital Properties, 749 A.2d at 1081;see also Donnelly, 730 A.2d at 9-10; Pellegrino, 788 A.2d at 1124.
It should also be noted that a claim that sovereign immunity bars the imposition of costs upon the State is wholly inconsistent with the State's behavior throughout these proceedings. During the course of roughly nine years of litigation, the State has recognized that, just like all other litigants, it too is responsible for paying costs imposed by the Rhode Island Rules of Civil Procedure and this Court. As an example, at the conclusion of trial, the State submitted a Bill of Costs that surpassed $1 million, and included costs imposed by the Rules of Civil Procedure, such as witness and expert attendance fees.See Exhibit C to Plaintiff's Bill of Costs dated March 26, 2007. When the State submitted this Bill of Costs, however, it never asserted any immunity in regards to incurring these costs or fees. Id. In fact, the State's own counsel proclaimed that, at least in the context of Co-Examiner expenses, "that was the need for the contingent fee agreement . . ."[3] (5/1/07 Hearing Tr. 30).
Finally, in a case where the State is the plaintiff, the primary purpose of sovereign immunity protection is not undermined. As pointed out by the State, the doctrine of sovereign immunity is embedded in the ideal of protecting the efficient running of government by removing the threat of litigation. See Afzall v. Virginia, 639 S.E.2d 279, 282 (Va. 2007) ("The doctrine of sovereign immunity serves a multitude of purposes *Page 11 
including . . . providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of government affairs through the threat or use of vexatious litigation."); see also Catone v. Medberry, 555 A.2d 328, 333 (R.I. 1989) ("The primary purpose of the public duty doctrine is to encourage the effective administration of governmental operations by removing the threat of potential litigation."); Calhoun v. City of Providence,390 A.2d 350, 355 (R.I. 1978) (Discussion of sovereign immunity and recognition of the prudence in allowing government officials to perform certain duties "free from the threat of potential litigation.") Deterrence of such claims, however, is not an issue when the State is the claimant. In situations such as the instant matter — where the State itself has made the affirmative decision that litigation is in its best interests — the need for governmental protection from vexatious litigation is simply not applicable.
In summation, the bulk of authority cited by the State addresses situations where the government entity is an unwilling participant in litigation and has had its sovereign immunity waived as a matter of legislative will. Under those circumstances, case law dictates that the Legislature's intent to waive sovereign immunity must be unequivocal, and the language of the statute must be meticulously analyzed in order to determine the scope of such waiver. Mulvaney, 671 A.2d at 312;Andrade, 448 A.2d at 1294; L.A. Ray Realty, 698 A.2d at 209. However, here, the State's sovereign immunity was not waived by legislative enactment, but by the affirmative filing of a claim and willing participation in litigation. See Capital Properties, 749 A.2d at 1081;see also Donnelly, 730 A.2d at 9-10; Pellegrino, 788 A.2d at 1124. There is no statutory language to parse in order to *Page 12 
determine whether the scope of the waiver includes the imposition of costs. The State made a calculated decision to pursue a claim against the Defendants and voluntarily participate in the judicial system, and thus may not invoke sovereign immunity to shield it from the imposition of costs. See Capital Properties, Inc., 749 A.2d at 1981;Donnelly, 730 A.2d at 9-10; Pellegrino, 788 A.2d 1124; seealso In Interest of R.M.H., 843 S.W.2d at 742; Barr, 497 P.2d at 344;Carter, 231 So.2d at 242; Glass, 170 S.W.2d at 249; Grand River DamAuthority, 111 P.2d at 489-99; Chicago, St. P., M. O. Ry. Co.,229 N.W. at 395. Consequently, as a matter of law and fundamental fairness, sovereign immunity will not insulate the State from responsibility for the Co-Examiner expenses, particularly in the face of Superior Court Rule of Civil Procedure 53.
 B Final Allocation of the Co-Examiner Fees and Expenses
Under Superior Court Rule of Civil Procedure 53, the Court is permitted to appoint examiners and allocate the corresponding costs as it sees fit, in its discretion.[4] Super. R. Civ. P. 53(a) ("The court may appoint a special master in any appropriate action . . . compensation to be allowed a master shall be fixed by the court, and shall be charged upon such parties . . . as the court may direct.")[5]
In the present matter, following the jury verdict and entry of judgment of abatement, the Court, pursuant to Rule 53, entered an order appointing Co-Examiners and placed preliminary responsibility for the resultant costs on the Defendants. (See 6/18/07 Order, ¶ 13(a)). In promulgating the *Page 13 
order, however, the Court explicitly deferred until later the final determination of who should bear responsibility for these costs.Id.[6] In light of the Supreme Court's subsequent decision vacating the jury verdict and directing judgment in favor of the Defendants, the time has come for this Court to make a final determination regarding allocation of the Co-Examiner fees and expenses. See Fed.R.Civ.P.53(g)(3) ("An interim allocation may be amended to reflect a decision on the merits."); see also Fed.R.Civ.P. 53(h) Advisory Committee Notes 2003 Amendments ("It may be proper to revise an interim allocation after decision on the merits"); Teradyne, Inc. v. Teradyne Indus., Inc.,676 F.2d 865, 871 (1st Cir. 1982) ("We hold that the district court's order, made at the time the case was referred to the master, which provided for an equal payment of costs, was merely a temporary method of financing the master. The court retained its power at the end of the case to determine who should ultimately bear the master's costs.")[7]
In determining allocation of Co-Examiner fees and expenses, a significant factor for courts to consider is which party ultimately prevailed in the matter. See 9 James Wm. Moore et al., Moore's FederalPractice § 53.52[3] at 53-124 (3d ed. 2007) ("Whether a party prevails in a case is probably the most important factor that the courts have historically considered in allocating the responsibility of paying a master's compensation."); see also Aird v. Ford Motor Co., 86 F.3d 216,220-22 (D.C. Cir. 1996) *Page 14 
(Order of reference allocated 50% of fees to each party; after the outcome of the case, the prevailing party's share of the special master's costs was properly treated as taxable costs.); Gary W. v.Louisiana, 601 F.2d 240, 246 (5th Cir. 1979) ("Moneys paid for a master are included in the recoverable costs under Rule 54(d) of the Federal Rules of Civil Procedure;[8] a district court does not abuse its discretion by taxing the losing party with the full share of the Special Master's fee."); Badger By-Products Co v. Employers Mut.Cas. Co., 64 F.R.D. 4, 9 (E.D. Wis. 1974) (In absence of showing by defendant of sufficient reasons for court to exercise its discretion to direct otherwise, plaintiff insured which prevailed in a suit would be awarded costs of reference to special master.); Norris v. Green,317 F.Supp. 100, 102-03 (N.D. Ala. 1965) (Examiner fee was initially imposed on both parties, but when plaintiffs prevailed, defendants were ordered to reimburse plaintiffs [for examiner expenses] as part of their recoverable costs). Furthermore, regarding this prevailing party concept, the First Circuit has ruled that as a general matter, absent sufficient cause, a prevailing party should not be held responsible for Co-Examiner fees and expenses. See Teradyne, 676 F.2d at 871("Generally it is an abuse of discretion for a district court without cause to charge the prevailing party the costs of the reference to a master.")
In this case, the Co-Examiner expenses were originally incurred by the Defendants because the Court chose to begin implementation of the judgment of abatement prior to conclusion of the appeals process. At the time the order appointing the Co-Examiners was entered, the Court's basis for imposing the costs and expenses on the Defendants was *Page 15 
the judgment of abatement. (See 5/1/07 Hearing Tr. at 29-30). Essentially, the Court believed that the party required to pay the Co-Examiner costs should be the party against whom judgment was entered. (Id.) In its July 2008 decision, however, the Rhode Island Supreme Court vacated the judgment of abatement. Consequently, the primary rationale for allocating responsibility for the Co-Examiner expenses to the Defendants no longer exists. Because the judgment of abatement has been vacated, the parties' roles have basically been reversed, and the Defendants are now considered the prevailing party. It would be unjust to require the Defendants to bear the cost of a remedy for which the Rhode Island Supreme Court has expressly stated they are not liable.See 9 James Wm. Moore et al., Moore's Federal Practice § 53.52[3] at 53-124 (3d ed. 2007); see also Aird, 86 F.3d at 220-22;Teradyne, 676 F.2d at 871; Gary W., 601 F.2d at 246; Badger ByProductsCo., 64 F.R.D. at 9; Norris, 317 F. Supp. at 102-03.
Moreover, under Rule 53, courts have shown a propensity for allocating examiner fees to the party that persisted upon incurring them over the objection of its opponent. See Adventures in Good Eating, Inc. v. BestPlaces to Eat, 131 F.2d 809, 815 (7th Cir. 1942) ("We are convinced that the defendants' objection to the reference should have been sustained . . . The plaintiff having asked for a reference, and the court having granted it on plaintiff's motion, the costs of such reference should be charged to the plaintiff."); see also Hart v.Community School Board, 383 F.Supp. 699, 767 (E.D.N.Y. 1974),affirmed on other grounds, 512 F.2d 37 (2d Cir. 1975) (Examiner expenses placed on party who necessitated them). In the present matter, the Defendants steadfastly argued against the appointment of the Co-Examiners, proclaiming that the more prudent course of action was to wait until the Rhode Island Supreme Court had an opportunity to make a *Page 16 
final ruling on their appeal. (See 5/1/07 Hearing Tr. at 13-14). Conversely, notwithstanding the Defendants' objections, the pending appeal, and the possibility of reversal, the State vehemently insisted on immediately proceeding with the abatement process and appointment of the Co-Examiners. Additionally, when the Defendants made an effort to stay the proceedings, arguing that they would suffer irreparable harm if forced to pay the Co-Examiner expenses pending the appeal, the State opposed the Defendants' request for stay. (Id. at 20-23). Also, in an attempt to alleviate the Court's irreparable harm concerns, the State suggested that in the event of an appellate reversal, the Defendants "could seek reimbursement" of the Co-Examiner expenses at the conclusion of the proceedings. (Id. at 31). With regard to the actions taken by both parties here, as a matter of law and fairness, the Court finds little merit in the State's suggestion that the Defendants should bear the burden of paying the Co-Examiner expenses. See Adventures in GoodEating, Inc., 131 F.2d at 815; see also Hart, 383 F.Supp. at 767;Johnson Far Box Co. v. National Rejectors, Inc., 269 F.2d 348, 351
(8th Cir. 1959) (Noting the "elements of unfairness in ordering the party, who opposed the reference, to pay the entire costs occasioned by it."); Fed.R.Civ.P. 53(h) Advisory Committee Notes 2003 Amendments ("A party whose unreasonable behavior has occasioned the need to appoint a master . . . may properly be charged all or a major portion of the master's fees.")[9]
Additionally, as a matter of judicial estoppel, this Court will not allow the State to renege on its word and argue that it cannot be held responsible for the Co-Examiner expenses for which it had previously lobbied. Judicial estoppel is an equitable doctrine *Page 17 
that is used by a court in its discretion to forbid parties from intentionally altering positions according to the demands of the moment, thus avoiding the "improper use of judicial machinery" and protecting "the integrity of the judicial process." See New Hampshire v.Maine, 532 U.S. 742, 750 (2001); see also Gaumond v. Trinity RepertoryCo., 909 A.2d 512, 519 (R.I. 2006); D H Therapy Associates v.Murray, 821 A.2d 691, 693 (R.I. 2003). The doctrine of judicial estoppel is essentially aimed at encouraging candor and fairness in court proceedings. See D H Therapy Associates, 821 A.2d at 693 ("By invoking judicial estoppel in this case, we recognize the rich history of this doctrine, driven by the important motive of promoting truthfulness and fair dealing in court proceedings."); see also Gray v. Fitzhugh,576 P.2d 88, 91 (Wyo. 1978) ("The doctrine of judicial estoppel * * * prohibits litigants from playing fast and loose with the courts; a party will not be allowed to maintain inconsistent positions in separate judicial proceedings."); Yarber v. Pennell, 443 S.W.2d 382, 385
(Tex.Civ.App. 1969) (Judicial estoppel prevents a party from asserting "a contention which would be diametrically opposed to his previously asserted position.") The United States Supreme Court's decision inNew Hampshire v. Maine provides particularly poignant language regarding the doctrine of judicial estoppel:
 "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. * * * This rule, known as judicial estoppel, `generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" (citation omitted) New Hampshire v. Maine, 532 U.S. at 749. *Page 18 
In determining whether to apply the doctrine of judicial estoppel in a particular legal proceeding, the following are several factors courts generally evaluate:
 "First, a party's later position must be `clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. at 750-51; see also Gaumond, 909 A.2d at 521 ("Of utmost importance in determining whether to apply the doctrine of judicial estoppel is whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped.")
Furthermore, judicial estoppel is considered an extraordinary remedy and will not be used as an alternative unless the equities are undoubtedly tilted in favor of the party seeking relief. SeeShorrock v. Scott, 944 A.2d 861, 864 (R.I. 2008) ("The application of judicial estoppel is an extraordinary form of relief, that will not be applied unless the equities clearly are balanced in favor of the party seeking relief.") (quoting Southern Exhibitions, Inc. v. Rhode IslandBuilders Association, Inc., 279 F.3d 94, 104 (1st Cir. 2002) (applying Rhode Island law)).
In the instant matter, during the May 1, 2007 hearing before this Court, the State was asked directly who would be responsible for the Co-Examiner expenses should the Supreme Court reverse the decision and vacate the judgment of abatement. (See 5/1/07 Tr. at 29-31). In response, the State presented to this Court the possibility of reimbursement for those cost. (Id. at 31). However, now, when faced with the prospect of responsibility for these costs, the State has changed its position and is arguing that the *Page 19 
Co-Examiner expenses cannot and should not be imposed on the State. If the State believed it could not be held responsible for these expenses, it should have expressed this opinion at the May 1, 2007 hearing instead of leading the Court to believe that, in the event of a reversal, the Defendants could seek reimbursement from the State. The State's current position concerning its potential responsibility for payment of the Co-Examiner expenses is wholly inconsistent with its previous position, as articulated to the Court at the May 1, 2007 hearing. As a matter of both law and judicial estoppel, the Court will not allow the State to propound such a contrary position in a subsequent proceeding relating to the same issue. See McAusian v. Union Trust Co., 125 A. 296, 301 (R.I. 1924) ("A party may not assume successive positions in the course of a suit or series of suits in reference to the same facts or state of facts, which acts are inconsistent with each other or mutually contradictory."); see also New Hampshire v. Maine, 532 U.S. at 749;Yarber, 443 S.W.2d at 385.
What is more, if this Court were to give credence to the State's current position and require that the Defendants bear the entirety of the Co-Examiner expenses, for the following reasons, the Defendants would suffer an unfair detriment. First, the entire foundation for the Defendants' liability in this case is based on a jury verdict that has been reversed by the Rhode Island Supreme Court. Moreover, the ensuing judgment of abatement, which precipitated the need for the Co-Examiners, was also vacated by the Supreme Court's ruling. In effect, the Defendants have been formally vindicated from any and all liability imposed upon them by the jury verdict and subsequent entry of judgment. Secondly, the State was the party that initially introduced the examiner concept, pursued it despite the prospect of reversal, and continually opposed a stay based *Page 20 
on the position that the expenses incurred could be sought as costs in the event of reversal. In light of these factors, to now hold the original Defendants solely responsible for the Co-Examiner expenses, while letting the State walk away unscathed, would undoubtedly impose an unfair burden on the Defendants. See Adventures in Good Eating,Inc., 131 F.2d at 815; Hart, 383 F.Supp. at 767; Johnson Far BoxCo., 269 F.2d at 351; see also Aird, 86 F.3d at 220-22;Teradyne, 676 F.2d at 871; Norris, 317 F.Supp. at 102-03.
Finally, considering the totality of the circumstances, if the State were to prevail, the equities of the matter would clearly be tilted in favor of the Defendants. As previously articulated, the Defendants stridently opposed the appointment of the Co-Examiners prior to conclusion of the appellate process. (See 5/1/07 Hearing Tr. at 13-14). In addition, the Defendants have since been vindicated from all liability with respect to this matter. On the other hand, the State was the party that assiduously argued for the expeditious appointment of the examiners and commencement of the abatement process despite the pending appeal. (Id. at 20). The State also led this Court to believe that it could be possible for the Defendants to obtain reimbursement for the Co-Examiner expenses through an award of costs should the decision be overturned. (Id. at 31). Consequently, to now adopt the State's current position and hold the Defendants liable for the Co-Examiner costs would be a most inequitable result. See New Hampshire v. Maine,532 U.S. at 749; Fitzhugh, 576 P.2d at 91; Yarber, 443 S.W.2d at 385; seealso Adventures in Good Eating, Inc., 131 F.2d at 815; Hart,383 F.Supp. at 676; Johnson Far Box Co., 269 F.2d at 351; Fed.R.Civ.P. 53(h) Advisory Committee Notes 2003 *Page 21 
Amendments; see also Teradyne 676 F.2d at 871; Badger By-ProductsCo., 64 F.R.D. at 9; Norris, 317 F.Supp. at 102-03.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court has determined that the State shall be responsible for reimbursement of all costs and expenses associated with the Co-Examiners.[10] Pursuant to ¶ 13(a) of the June 18, 2007 Order, the Court reserved the right to modify it original allocation of Co-Examiner expenses. Here, where the Rhode Island Supreme Court has overturned the jury verdict against the Defendants and vacated the judgment of abatement, it would be inappropriate to continue holding the Defendants liable for any portion of the Co-Examiner expenses.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] There is a line of closely related cases holding that a State waives its Eleventh Amendment immunity when it voluntarily elects to participate in litigation. See Lapides v. Board of Regents,535 U.S. 613, 619 (2002) ("It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the `Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the `Judicial power of the United States' extends to the case at hand. And a Constitution that permitted States to follow their litigation interest by freely asserting both claims in the same case could generate seriously unfair results."); see also College Savings Bank v. FloridaPrepaid Postsecondary Education Expense Board, 527 U.S. 666, 675-76
(1999) ("Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a `clear declaration' that it intends to submit itself to our jurisdiction."); Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284
(1906) ("Where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment.")
[2] In making its argument, the State relies in part on a Connecticut case, State v. Chapman, 407 A.2d 987, 988 (Ct. 1978). InChapman, which was the only case cited by the State wherein the sovereign was the plaintiff, the court never reached the key issue of whether bringing an affirmative claim waived the State's sovereign immunity protection. In addition, even if Chapman had considered the issues, it would be inconsistent with Rhode Island law, which does recognize waiver by voluntary conduct. See Capital Properties, Inc. v.State, 749 A.2d 1069, 1081 (R.I. 1999); Donnelly v. Town ofLincoln, 730 A.2d 5, 9-10 (R.I. 1999)
[3] Specifically, the contingent fee agreement between the State and Motley Rice — the State's outside counsel in this matter — provides that "all costs and expenses of prosecuting said claims . . . will be borne by Motley Rice." (See Contingent Fee Agreement and Contingent FeeAddendum).
[4] Throughout this decision, the term "examiner(s)" is synonymous with the phrase "special master."
[5] It should be noted that the committee that drafted Rule 53 did so with the intention of moving it "into much closer harmony with the federal model." Super. R. Civ. P. 53(a) (committee notes).
[6] Paragraph 13(a) of the Order provides that: "The Defendants shall initially be jointly responsible for payment of all fees, costs, and expenses associated with the Master, and shall divide those costs in equal shares unless they agree or have agreed otherwise. Finaldetermination of the responsibility for such costs shall be determinedby the Court." See 6/18/07 Order, ¶ 13(a) (June 18, 2007) (emphasis added).
[7] Like the instant matter, in Teradyne, after appeal the issue of examiner costs was reheard by the lower court in order to determine how the examiner's costs should ultimately be allocated.
[8] While this decision deals exclusively with Rule 53 and not Rule 54, nothing herein contained should be construed as an indication of the Court's ultimate ruling with respect to costs pursuant to Rule 54.
[9] The Court hastens to add, however, that this quote does not indicate that the Court presently is holding that the State's behavior was unreasonable.
[10] According to the fee agreement between Motley Rice and the State, Motley Rice agreed to bear "all costs and expenses of prosecuting" this case. (See Contingent Fee Agreement and Contingent Fee Addendum). The costs incident to the co-examiners and remedy portion of this case imposed here under Rule 53 could potentially be covered under that agreement. However, this is not a matter that the Court will address at the present time. Thus, a determination by the Court that the State is obligated to pay the Co-Examiner fees and expenses in no way speaks to the issue of whether Motley Rice will ultimately bear responsibility for these expenses. *Page 1