Richard G. AIRD, et al., Beverly C. Moore, Jr., et al., Appellants/Cross–Appellees, Landon G. Dowdey, Appellee,

v.

FORD MOTOR COMPANY, Appellee/Cross–Appellant.

Nos. 95–7111 & 95–7120.

United States Court of Appeals, District of Columbia Circuit.

Argued April 12, 1996.

Decided June 4, 1996.

Rehearing and Suggestion for Rehearing In Banc Denied July 9, 1996.*

As Amended Aug. 12, 1996.

---

* Circuit Judge Henderson did not participate in the order for rehearing in banc.

Beverly C. Moore, Jr., Washington, DC, and John E. Price, Springfield, MO, argued the causes and filed the briefs for appellants/cross-appellees.

Carl R. Schenker, Jr., Washington, DC, argued the cause for appellee/cross-appellant Ford Motor Company with whom William T. Coleman, Jr., Richard C. Warmer and John Beisner were on the briefs.

Marya C. Young, Binghampton, NY, argued the cause and filed the brief for appellee Landon G. Dowdey.

Before: SILBERMAN, WILLIAMS, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The first time this case came to us, it held out the promise of hundreds of millions of dollars in damages for a nationwide class of millions of plaintiffs. *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C.Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987). The second time, not even one plaintiff remained to prosecute the appeal. *Walsh v. Ford Motor Co.*, 945 F.2d 1188 (D.C.Cir.1991). The case now arrives in this court a third time, more than four years after we put an end to litigation of the merits, with only the lawyers left to argue over costs and sanctions. Unfortunately, after 15 years of litigation, we cannot end the case here, but must remand one final issue to the district court. While we affirm the district court's order assessing as costs the prevailing party's share of the special master's fees, we reverse the court's decision absolving one of the plaintiffs' counsel from joint and several liability for any costs, and we remand the case for the court to reconsider the special master's recommendation that sanctions be imposed on plaintiffs' counsel.

## I.

In its earliest incarnation, this case was a class action breach of warranty suit against Ford Motor Co. filed on behalf of owners of Ford vehicles. Plaintiffs, who brought the suit pursuant to the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C. §§ 2301 *et seq.*, alleged a disconcerting tendency for the automatic transmissions to slip from "park" into "reverse". The district court ultimately denied class certification and dismissed the claims of the individual plaintiffs, determinations that became final when this court dismissed plaintiffs' appeal.

The district court also issued several orders in response to the parties' motions regarding costs and sanctions.[1] Defendant Ford and two distinct groups of plaintiffs' counsel have appealed and cross-appealed the district court's resolution of those issues; a third member of the plaintiffs' legal team, while satisfied with the orders, appears here as both appellee and cross-appellee. To explain how this unusual alignment of parties came about, we set forth the events leading up to the plaintiffs' defeat on the merits.

Beverly C. Moore, Jr. acted as lead plaintiffs' counsel from the outset. Moore, who apparently had academic interest and practical experience in both class action litigation in general and the Magnuson–Moss Act in particular, put together a counsel team whose membership over the course of the litigation included both individual lawyers and large firms. One of the original members of the team was Landon G. Dowdey, a member of the District of Columbia bar and long-time trial lawyer. While other team members, including Moore, undertook labor-intensive aspects of the case such as motions relating to the Magnuson–Moss Act, discovery, and class certification, Dowdey's role was limited to advising Moore on other areas of strategy and local practice in which Dowdey was particularly knowledgeable. A few months after plaintiffs successfully moved for class certification, *Walsh v. Ford Motor Co.*, 106 F.R.D. 378 (D.D.C.1985), attorneys associated with the firm of Woolsey, Fisher, Whiteaker & McDonald (collectively known to the parties as "Missouri counsel"), who had experience in litigating "park-to-reverse" cases against Ford, joined the plaintiffs' team and were assigned primary responsibility for handling discovery.

In September 1985, two months after Missouri counsel had entered the case, the district court appointed a special master to oversee discovery and a few other procedural matters. The order of reference provided that "[a]ll compensation and expenses in connection with this Order shall be paid 50% by plaintiffs and 50% by defendants." In the

---

**1.** Order Concerning Costs, Civ. A. No. 81–1998–JLG (Apr. 25, 1995); Memorandum, *id.* (Mar. 10, 1995); *id.* (May 10, 1994).

spring of 1986, the special master established a schedule for discovery.

Shortly thereafter, the plaintiffs suffered two major reversals. First, in August 1986, the firm with which Missouri counsel were associated suffered a "major schism" and lost one-third of its attorneys. The resulting turmoil, coming just when the pace of discovery was accelerating under the master's schedule, compromised Missouri counsel's ability to handle discovery as contemplated in their agreement with Moore. Moore attempted to enlist other firms as co-counsel to take up the slack, but his search was hampered by a second setback. In December 1986, this court vacated the class certification, *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C.Cir. 1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987), making the case much less attractive to potential plaintiffs' counsel.

In the meantime, the plaintiffs' responses to Ford's interrogatories came due, and the plaintiffs failed to respond at all to many of the interrogatories. Ford moved to compel responses. The special master, while expressing sympathy for counsel's difficulties, concluded that it was too late for them to obtain an extension of time to respond. Accordingly, on December 11, 1986, the special master granted Ford's motion to compel and ordered the plaintiffs to respond to specified interrogatories by January 9, 1987.

After the plaintiffs responded to the interrogatories, Ford again moved to compel discovery, maintaining that the responses were inadequate. Ford also requested that the special master impose discovery sanctions. The plaintiffs responded that the detailed and technical interrogatories were "extraordinarily prolix," a contention with which the special master again showed some sympathy. The special master also found, however, that the "plaintiffs' responses to these interrogatories manifest an almost studied refusal to be specific. Many of plaintiffs' answers improperly substitute general pleading-type allegations for the detailed, fact-specific explicitness which the discovery process requires." The special master therefore concluded that the plaintiffs had not complied with the December 11 order compelling discovery, and issued an order on May 5, 1987, compelling further interrogatory responses. The special master deferred consideration of Ford's request for sanctions, however, until after the

plaintiffs had an opportunity to supply satisfactory responses to the interrogatories. On Ford's motion for reconsideration, the special master again decided, on May 28, 1987, that the plaintiffs had violated the December 11 order and directed the plaintiffs to supplement their responses by June 4, 1987.

On July 9, 1987, the special master took up the sanctions question that he had deferred in May. Ford sought only its expenses relating to the plaintiffs' failure to comply with the December 11 order and did not request sanctions for any alleged deficiencies in the plaintiffs' supplemental responses to the May orders. The special master, amplifying upon his earlier findings, concluded that the plaintiffs had violated the December 11 order and that the violation was unjustified. Noting that the entire plaintiffs' counsel team—Moore, Dowdey, and Missouri counsel—bore responsibility for the inadequate discovery responses, the special master concluded that there was no principled way to single out any one of them for punishment and held each of them jointly and severally liable for sanctions. Turning to the measure of sanctions, the special master decided that the expenses caused by the plaintiffs' noncompliance with the December 11 order were fairly measured by Ford's costs in obtaining the two May orders requiring the plaintiffs to supplement their deficient responses. He ordered the parties to confer and determine a reasonable award, but it appears that an amount was never fixed. Following a series of events not fully reflected in the record, the plaintiffs appealed the July 9 sanction order to the district court.

Throughout this period, relations among the plaintiffs' counsel deteriorated. Moore and Dowdey began to disagree over strategy, and the disagreements became heated and personal. In February 1987, after the plaintiffs had filed the deficient interrogatory responses pursuant to the December 11 order compelling discovery, Dowdey moved to have his name removed from some of the documents because he did not "want his name associated with procedures in this case of which he did not, and does not, approve." On October 30, 1987, Dowdey moved to withdraw as class counsel, and the district court

granted his motion in December 1987. In the spring of the following year, Dowdey also moved for reconsideration of the July 9 sanction order, requesting that the special master relieve him of liability because he was not responsible for the deficient discovery responses. The special master held that motion in abeyance and never ruled on it.

The case lumbered on until 1990, when Ford (having defeated the class recertification motion) prevailed in the district court on the ground that the court lacked subject matter jurisdiction over the claims of the individual plaintiffs. Ford then filed a bill of costs, of which more than 70% ($24,947.77) represented the fees that it had paid to the special master pursuant to the order of reference. On May 10, 1994, the district court addressed both the bill of costs and plaintiffs' appeal of the special master's July 9 sanctions order. The court described the discovery sanctions issue as "moot" in light of the termination of the litigation and declined to pursue the issue further. It also concluded that the master's fees were properly taxed as costs, for which the plaintiffs' counsel personally were liable by the terms of their retainer agreements. However, because of the "limited involvement" of Missouri counsel, the court declined to tax costs against them.

Ford, Dowdey, and Moore each moved for reconsideration. By order of May 10, 1995, the district court adhered to its decision not to pursue the issue of discovery sanctions. The court believed that the special master had not finally concluded that the plaintiffs had violated the December 11 order because he had given them a final opportunity to supplement their responses after the May orders. The court also reaffirmed the amount of taxable costs, including the special master's fees. As to Missouri counsel, however, the court reversed its earlier ruling and ruled that their role in preparing a statistical database to be used in class certification warranted holding them jointly and severally liable for costs. Conversely, the court relieved Dowdey of responsibility, noting that

he had withdrawn as counsel in 1987 and that his involvement in discovery was minimal.

These appeals and cross-appeals challenge the May 10, 1995 order on reconsideration. First, Moore and Missouri counsel, as appellants, contend that the special master's fees should not have been taxed as costs. Second, they contend that in any event Dowdey should have been held jointly and severally liable for whatever costs were properly taxed. Third, Missouri counsel alone maintain that they should have been relieved of liability for costs, as the district court originally ordered. Finally, Ford, as cross-appellant, contends that the district court erred in not assessing monetary discovery sanctions on the plaintiffs' counsel pursuant to the special master's July 9 order.

## II.

When Ford filed its bill of costs in 1990 under Federal Rule of Civil Procedure 54(d), the rule provided that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs."[2] 28 U.S.C.App. (1988). Appellants contend that master's fees do not qualify as "costs" within the meaning of Rule 54(d). Unanimous authority, however, including two decisions from this court, is against them. *Walutes v. Morrissette,* 11 Fed.R.Serv.2d (Callaghan) 1201, 1202 (D.C.Cir.1968) (per curiam); *Dyker Bldg. Co. v. United States,* 182 F.2d 85, 89 (D.C.Cir.1950); *National Org. for the Reform of Marijuana Laws v. Mullen,* 828 F.2d 536, 546 (9th Cir.1987); *Gary W. v. Louisiana,* 601 F.2d 240, 246 (5th Cir.1979); *Southern Agency Co. v. LaSalle Cas. Co.,* 393 F.2d 907, 915 (8th Cir.1968); *Trout v. Ball,* 705 F.Supp. 705, 707–08 (D.D.C.1989); *see also* 9A Charles A. Wright et al., *Federal Practice and Procedure* § 2608 (1995). Appellants contend that these authorities cannot be considered good law after the Supreme Court's decision in *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), which they maintain holds that the only "costs" that can be awarded under Rule 54(d) are those explicitly listed in 28 U.S.C. § 1920.[3] Because mas-

---

**2.** We do not consider Rule 54(d) as amended in 1993. Rule 54(d)(1) & (2) (1993).

**3.** Section 1920 provides:
   A judge or clerk of any court of the United States may tax as costs the following:

ter's fees are not among the costs enumerated in § 1920, appellants contend that *Crawford Fitting* prohibits district courts from ever taxing them as costs.

■ We need not address appellants' Rule 54(d) contentions because the district court properly approved Ford's request for reimbursement of special master's fees under Rule 53(a). *Crawford Fitting* makes clear not only that costs not enumerated in § 1920 may be taxed if there is a contractual or an express statutory source of authority to do so, *id.* at 439, 107 S.Ct. at 2496; *accord West Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 86–87, 111 S.Ct. 1138, 1140–41, 113 L.Ed.2d 68 (1991), but also leaves Rule 53(a) unscathed. Rule 53 vests the district court with authority to allocate master's fees in favor of the prevailing party. *See* 28 U.S.C. § 2071(a) (1994). Under Rule 53(a), "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties ... as the court may direct." As this permissive language suggests, the district court enjoys broad discretion to allocate the master's fees as it thinks best under the circumstances of the case. *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987); *Morgan v. Kerrigan*, 530 F.2d 401, 427 (1st Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976); *see also Dyker Bldg. Co.*, 182 F.2d at 89.

■ While in some cases the costs might best be divided among the parties,[4] or charged at least to some extent against the party that created the need for reference to the master,[5] the district court has the authority in appropriate cases to tax the master's fees as costs against the losing party.[6] We therefore agree with the only other court to consider the matter in light of *Crawford Fitting*, under Rule 53(a) the court "may direct" that liability for master's fees await the outcome of the case. *Fulton Fed.*, 143 F.R.D. at 294–96. Thus, once the district court exercised its discretion under Rule 53(a), Ford's share of the special master's costs was properly treated as taxable costs.

Appellants separately challenge the district court's assessment of master's fees against them on the ground that the assessment conflicted with the order of reference, which specified that the fees would be "paid 50% by plaintiffs and 50% by defendant," and did not expressly provide that the prevailing party could subsequently recover its share as costs. The order of reference, however, does not purport to allocate responsibility for special master's fees for all time, even after the prevailing party has been identified at the end of the case. *See* Order of Reference Memorandum, Civ. A. No. 81–1998–JLG (May 10, 1994), at 5 (citing *Trout v. Ball*, 705 F.Supp. 705, 707 (D.D.C.1989)). The better practice might well be for the district court to advise the parties in advance that it plans to tax master's fees as costs, either specifically in the order of reference, *see, e.g.*, *Fulton Fed.*, 143 F.R.D. at 296, or generally by local rule, *see, e.g.*, *Calloway v. Marvel Entertainment Grp.*, 111 F.R.D. 637, 652 (S.D.N.Y. 1986), *vacated in part on other grounds*, 854 F.2d 1452 (2d Cir.1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Entertainment Grp.*, 493 U.S. 120, 110

---

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920 (1994).

**4.** *See, e.g., United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir.1990); *United States v. Cline*, 388 F.2d 294, 296 (4th Cir.1968).

**5.** *See, e.g., Johnson Fare Box Co. v. National Rejectors, Inc.*, 269 F.2d 348, 351 (8th Cir.1959); *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 562 (N.D.Cal.1987).

**6.** *See, e.g., K–2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 476–77 (9th Cir.1974); *Fulton Fed. Sav. & Loan Ass'n v. American Ins. Co.*, 143 F.R.D. 292, 295–96 (N.D.Ga.1991).

S.Ct. 456, 107 L.Ed.2d 438 (1989).[7] Nevertheless, the district court did not abuse its discretion here by failing to give such advance notice, as evidenced by the apparently widespread practice of treating such fees as taxable costs.

Moore's further contention that he would not have consented to the reference of the case to a special master had he known that he and his co-counsel would be held liable for Ford's share if they lost the case misses the mark. Moore reads the Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2), to guarantee prevailing consumers—but not manufacturers like Ford—recovery of costs, including master's fees. How this feature of the Act could affect Moore's willingness to have the case referred is left unexplained. Whatever the precise contours of the argument, however, it mistakes the nature of the court's power to refer discovery matters to a master: reference does not require the parties' consent. *See* FED.R.CIV.P. 53(e)(4). Particularly when the parties are embroiled in repeated, fact-intensive discovery disputes, a district court may find it most efficient to impose on the parties, at their own expense and without their consent, a discovery master. The court's ability to manage its docket and enforce the discovery rules in such a case may depend greatly on its power to allocate the costs of reference as it deems appropriate. *Cf. Ex parte Peterson,* 253 U.S. 300, 314–15, 40 S.Ct. 543, 547–48, 64 L.Ed. 919 (1920). While the rules do not endorse the routine reference of matters to masters, *see* FED. R.CIV.P. 53(b), it is nonetheless clear that masters can enhance a district court's ability pursuant to Rule 1 to "secure the just, speedy, and inexpensive determination" of suits before it, provided that the court has the discretion to tailor the terms of reference to the circumstances of each case.

For these reasons we conclude that the district court did not abuse its discretion by taxing the master's fees against the plaintiffs' counsel.

### III.

■ The question remains who among the plaintiffs' counsel should have borne the costs. Initially, we conclude that the district court acted within its discretion in holding Missouri counsel liable for costs. Moore's

retainer agreements with the individual class members provided that counsel would pay the costs of litigation, and Missouri counsel, aware of those agreements, joined the case as co-counsel. Moreover, Moore and Missouri counsel entered into an agreement regarding fees and costs, which provided that Missouri counsel would reimburse Moore for one-half of the costs and expenses of the case.

Missouri counsel nonetheless contend that their role in the case was so limited that it was an abuse of discretion to hold them jointly and severally liable for costs. If there were ever a case in which such an argument could be sustained, this is not it. Missouri counsel have been counsel of record in this matter since 1985. They assumed responsibility for managing discovery, one of the most crucial and labor-intensive aspects of this mammoth case. The district court could properly find significant Missouri counsel's efforts in compiling a database of park-to-reverse incidents involving Ford vehicles. Their inability to discharge their discovery responsibilities may have contributed to the plaintiffs' ultimate defeat, and regardless of whether the crippling "schism" at their law firm was their fault, it was not the fault of anyone else involved in this litigation.

Missouri counsel fault the district court's reliance on the database on the grounds that most of the work was done by paralegals and secretaries at their law firm. Again, it is difficult to understand what this proves, for if Missouri counsel are not responsible for the work done by their own employees, they have not explained who else in the case is. Finally, Missouri counsel compare their position to Dowdey's, contending that if Dowdey is not required to pay costs given his limited involvement in the case, neither should they. Because we conclude that Dowdey should not have been let off the hook either, this argument evaporates.

■ Unlike Missouri counsel, Dowdey had the foresight to withdraw as early as 1987. He maintains that because he was not counsel in the case when Ford became the prevailing party, and in fact left because he foresaw that Moore's tactics would lead to

---

7. Unlike the local rule cited in *Calloway,* District of Columbia District Court local rules do not specify whether master's fees are to be taxed. *Cf.* D.D.C. R. 210, 214.

defeat, he cannot be saddled with costs that are contingent on Ford's victory. The district court agreed with this analysis, and also credited Dowdey's account of his minimal role in the litigation. Accepting the facts found by the district court, we nonetheless conclude that the court erred in not imposing joint and several liability on Dowdey.

Dowdey, unlike Missouri counsel, was counsel of record from the outset. He was on the brief in the first appeal to this court, when class certification was vacated. By the time he withdrew, the plaintiffs' case was in disarray on the eve of the crucial class recertification motion, with discovery sanctions outstanding and a counsel team that the special master suggested was incapable of handling a case of this magnitude and complexity. In fairness to his colleagues, it cannot be said the case was lost entirely after Dowdey left; this defeat was a team effort that was well underway by the time Dowdey withdrew.

Nor does Dowdey's limited role in discovery matters alter the situation. First, during the crucial months at the end of 1986 and the beginning of 1987, it appears that none of the plaintiffs' counsel were actually accomplishing much by way of responding to discovery. Thus, it is difficult to understand how Dowdey's inactivity distinguishes him from his erstwhile co-counsel. The special master acknowledged as much in holding all counsel liable for discovery sanctions. Second, and more important, the costs assessed by the district court reflected the litigation as a whole, not just discovery. By the time Moore tried to enlist Dowdey's assistance with discovery in 1987, the case had been active for the better part of a decade, including a trip to the circuit court and back. Throughout this period, Dowdey was part of the counsel team and presumably carried out the responsibilities that were apportioned to him, however limited those responsibilities might have been. Finally, if it is true that Dowdey did virtually nothing during the six years in which he was counsel of record, that is hardly to his credit. We cannot put it any better than did the special master:

> Those attorneys who did not participate in preparation of these responses and papers have not shown that they had a reasonable basis to believe that plaintiffs' discovery obligations were or could be adequately discharged by those to whom the baton was apparently passed. These attorneys knew, or were required to know, that plaintiffs were not providing discovery pursuant to the Federal Rules of Civil Procedure for even if they were no longer responsible for the discovery phase of this case, they must still supervise and remain aware of all aspects of the instant case. There is no evidence that these attorneys discharged that obligation. The record supports, if it does not compel, the conclusion that these attorneys permitted, or acquiesced in and thereby "condoned," serious discovery abuse extending over many months.

(internal citations and quotation marks omitted). Rather than simply insisting that his name be removed from offending pleadings, Dowdey had an obligation to the court and to his clients to see that the case was properly litigated. *Cf.* D.C.Code of Professional Responsibility DR 2–107(A)(3) [8] (1991 edition); *id.* DR 6–101(A).[9] While it appears that Dowdey attempted in vain to persuade Moore and other members of the counsel team to take a more responsible course of action, the fact remains that he had cast his lot with them and must accept his share of the consequences of defeat.[10]

That said, we find no abuse of discretion by the district court in ruling that Dowdey was not responsible for the costs that were incurred by Ford after Dowdey withdrew

---

**8.** DR 2–107(A)(2) provides: "A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless ... [t]he division is made in proportion to the services performed and responsibility assumed by each."

**9.** DR 6–101(A) provides: "A lawyer shall not ... [h]andle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it [nor] [n]eglect a legal matter entrusted to him."

**10.** Dowdey, Moore, and Missouri counsel entered into a settlement agreement of a collateral interpleader action in February 1990. Dowdey contends that in this settlement the other members of the team agreed to indemnify him for costs that might be assessed against him in the instant litigation. We express no opinion on the legal effect of the settlement, nor should our opinion be read to prevent Dowdey from attempting to enforce his understanding of it.

from the case. Dowdey is jointly and severally responsible only for the costs incurred while he was counsel of record, as a member of the plaintiffs' counsel team. Unlike Missouri counsel, who agreed to contribute to those costs incurred before they joined the case, Dowdey entered into no agreement to pay for costs wholly unrelated to his duties and responsibilities as counsel.

## IV.

Finally, on the question of discovery sanctions, the district court rebuffed Ford's request to assess monetary sanctions against the plaintiffs' counsel because, as the court read the special master's reports, the special master had not "finally" determined that the plaintiffs had violated a discovery order. It is true that even after the May orders, the special master gave the plaintiffs another chance to supplement their deficient discovery responses and never decided whether the supplemental responses were independently sanctionable. However, it is equally clear that the special master found that the plaintiffs violated the December 11 discovery order and that Ford was entitled to recover the expenses it incurred as a result of that violation.

▮ To review the chronology briefly, the plaintiffs initially failed to respond at all to many of Ford's interrogatories. On Ford's motion, the special master entered the December 11 order, pursuant to Federal Rule of Civil Procedure 37(a), ordering the plaintiffs to respond. The responses were inadequate. By again failing to file adequate responses in a timely fashion, the plaintiffs violated the December 11 order. That forced Ford to go back to the special master on May 5 and May 28 and obtain two more orders compelling supplemental responses. As the special master recognized, even if the supplemental responses produced in response to the May orders ultimately did satisfy the plaintiffs' discovery duties, Ford still deserved to be compensated for its costs in forcing the plaintiffs to make those supplemental responses. Consequently, the fact that the master gave the plaintiffs another chance to furnish adequate responses before imposing the litigation sanctions available un-

der Rule 37(b)(2)(A–D) does not affect the plaintiffs' liability for monetary sanctions for the original violation of the December 11 order.

The July 9 order shows that this is how the special master understood the situation. "[D]isposition turns on whether plaintiffs have shown that failure to comply with the *first* [December 11] Rule 37 order was substantially justified.... Further discovery responses filed after entry of the *second* [May 5] Rule 37 order are relevant only insofar as those responses bear on claims advanced to justify noncompliance with the initial order." After rejecting the plaintiffs' purported justifications, the special master concluded:

> Defendant has limited its application to the expenses reasonably attributable to the relief it obtained by orders entered on May 5 and 28, 1987. That is a conservative and fully fair measure of the "reasonable expenses, including attorney's fees, caused by the failure" to comply with the December 11 order. The parties will be directed to confer concerning the amount of a reasonable award and, if agreement cannot be reached, to propose a schedule for evidentiary submissions addressed to remaining issues.

(quoting Fed.R.Civ.P. 37(b)(2)) (other citations omitted). In an accompanying order, the special master concluded that Missouri counsel, Moore, and Dowdey were each

> jointly and severally liable to defendant for its reasonable expenses, including attorney's fees and compensation and expenses paid under the order of reference, caused by plaintiffs' failure to comply with the order of December 11, 1986 and reasonably attributable to the relief defendant obtained by orders entered May 5 and May 28, 1987.

Given these findings, the district court erroneously declined to pursue the sanctions issue.

Ford contends that the only task for the district court on remand is to calculate the amount of the sanction. The special master's May 5 order, which the plaintiffs did not appeal, found that the plaintiffs had violated

the December 11 order. Ford maintains that the plaintiffs therefore waived their challenge to the special master's finding that they were liable for a violation. We disagree. While the May 5 order did find a violation, it expressly reserved decision on whether to impose sanctions. Once the master decided to impose sanctions on July 9—although he never fixed an amount—the plaintiffs did seek district court review. We decline to hold that the plaintiffs waived an issue by failing to take what amounts to an interlocutory appeal. Thus, on remand, the plaintiffs' counsel may assert their claim that they never violated the December 11 order.

Loathe as we are to revisit upon the district court a case that it once described as a "trial court's nightmare of a litigation monster," *Walsh v. Ford Motor Co.,* 130 F.R.D. 260, 277 (D.D.C.1990), one piece of it remains to be addressed: Ford's request for discovery sanctions for the plaintiffs' violation of the special master's December 11, 1986, discovery order. On remand the district court does not necessarily have to review in detail each of the interrogatories and responses, but may evaluate Ford's counsel's challenge in light of the special master's findings as well as any submissions that the court may order by either parties' counsel indexing or otherwise identifying material interrogatories and responses. *Cf.* FED.R.CIV.P. 53(e) ("[T]he court shall accept the master's findings of fact unless clearly erroneous."). Any sanction thereafter imposed, of course, cannot duplicate recovery of a portion of the special master's fees that Ford has already recovered as taxable costs.

Accordingly, we vacate the portion of the district court's order declining to reach the sanctions issue and remand for a reevaluation; we otherwise affirm the order taxing as costs Ford's share of the special master's fees except insofar as the order excused counsel Landon Dowdey from joint and several liability with his co-counsel for costs incurred while he was counsel of record.