# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LCT CAPITAL, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | C. A. No. N15C-08-109 JJC CCLD |
| NGL ENERGY PARTNERS LP *and* | : | |
| NGL ENERGY HOLDINGS LLC, | : | |
| | : | |
| Defendants. | : | |

Submitted: May 2, 2023
Decided:  June 20, 2023

## MEMORANDUM  OPINION

*Plaintiff's Application for Costs, Prejudgment Interest, and Post-Judgment Interest*
– **GRANTED, in part**

John L. Reed, Esquire, Daniel P. Klusman, Esquire, Peter H. Kyle, Esquire, DLA PIPER, LLP, Wilmington, Delaware; Michael D. Hynes, Esquire, Emma Kramer Jones, Esquire, DLA PIPER, LLP, New York, New York; Benjamin D. Schuman, Esquire, Ellen E. Dew, Esquire, DLA PIPER, LLP, Baltimore, Maryland; *Attorneys for LCT Capital, LLC.*

Steven T. Margolin, Esquire, Lisa Z. Brown, Esquire, Samuel L. Moultrie, Esquire, Bryan T. Reed, Esquire, GREENBURG TRAURIG LLP, Wilmington, Delaware; Hal S. Shaftel, Esquire, Daniel Friedman, Esquire, GREENBERG TRAURIG LLP, New York, New York; *Attorneys for Defendants NGL Energy Partners LP and NGL Energy Holdings LLC.*

**Clark, R. J.**

A jury returned a verdict against Defendants NGL Energy Partners LP, and NGL Energy Holdings LLC (hereafter collectively "NGL") after a nine-day damages-only trial. The jury considered a *quantum meruit* claim and found the reasonable value of the services that Plaintiff LCT Capital, LLC (hereafter "LCT") provided to NGL to be $36 million.

In this decision, the Court first addresses what costs it should include in the judgment. Second, the Court examines whether the Court should suspend the accrual of prejudgment interest during seven periods of pre-trial delay highlighted by NGL. Third, the Court considers whether it should award post-judgment interest on only the principal amount of the judgment or whether it should include prejudgment interest in the calculation.

As explained below, LCT's application is granted, in part. After considering the parties' positions, the Court (1) awards LCT a portion of the contested costs, (2) declines to suspend the accrual of interest before trial, and (3) includes simple interest in the post-judgment interest calculation.

## I. BACKGROUND

LCT sued NGL in August 2015 for alleged fraud, breach of contract, and the quasi-contractual remedies of unjust enrichment and *quantum meruit*. The matter proceeded to trial in July 2018. By then, LCT had two remaining causes of action: fraud and *quantum meruit*. Although LCT presented only one theory of damages for both claims, the special verdict form included two separate lines for the jury to assess damages.[1] The jury then returned a combined $33 million verdict for LCT spread across the two lines.[2]

---

[1] Jury Instr., Jul. 31, 2018 (D.I. 429).
[2] Verdict Form, Aug. 1, 2018 (D.I. 430).

Thereafter, the parties filed cross-appeals. On appeal, the Delaware Supreme Court reversed the verdict and remanded the matter for a new trial.[3] It provided the following reasons for doing so: (1) the Superior Court should not have submitted the question of fraud to the jury because the fraud claim, which did not permit benefit of the bargain damages, was subsumed within the *quantum meruit* claim;[4] and (2) the special verdict form contained two separate lines for damages, which may have confused the jury because LCT presented evidence of only one theory of damages (a "unitary theory" as explained by the Court) for both claims.[5] As a result, the Supreme Court could not determine, on appeal, whether the jury understood its role.[6] The Supreme Court then affirmed the portion of the Superior Court's decision that granted a new trial while limiting the retrial to the *quantum meruit* claim.[7]

Because of pandemic-related delays, Court docket-related delays, and other delays contributed to by the parties, the second trial did not start until February 3, 2023. As in the first case, NGL conceded liability under *quantum meruit*. After a nine-day trial, the second jury returned a verdict in favor of LCT for $36 million.[8]

Presently, LCT seeks costs, prejudgment interest, and post-judgment interest as the prevailing party.[9] NGL disputes a portion of LCT's application.[10] This decision resolves those disputes in series after addressing the standard applicable to each element in controversy.

---

[3] *LCT Capital, LLC v. NGL Energy Partners LP*, 249 A.3d 77, 102 (Del. 2021), *corrected* (Mar. 4, 2021).

[4] *Id.* at 99.

[5] *Id.* at 97–98.

[6] *Id.* at 101.

[7] *Id.*

[8] Verdict Form, Feb. 15, 2023 (D.I. 626).

[9] Pl.'s Mot. for Costs, Pre-J. Int., and Post-J. Int. [hereinafter "Pl.'s Mot."].

[10] Def.'s Opp'n to Pl.'s Mot. [hereinafter "Def.'s Opp'n"].

## II. TRIAL COSTS

Superior Court Civil Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party upon application to the Court."[11] The Delaware Supreme Court had defined the scope of Rule 54(d) costs as "[c]osts . . . in the nature of incidental damages awarded by law to reimburse the prevailing party for expenses necessarily incurred in the assertion of [the party's] rights *in court*."[12] Under the American system, costs due the prevailing party as a part of a judgment are nearly always less than that party's total expenses incurred throughout the lawsuit.[13]

In this case, the Court resolves most of the cost disputes by recognizing the difference between trial costs and pretrial expenses. The latter are generally recoverable only when permitted by a separate rule or statute.[14] As explained below, LCT is due (1) all uncontested costs that it requests in its application, and (2) those contested costs that were incidental and necessary to LCT's trial presentation.

### A. Special Master's Fee

Before trial, the parties each paid one-half of the special discovery master's fee for reviewing and deciding their discovery disputes. LCT now seeks to include its one-half of the fee, $109,109.75, as part of the judgment.[15]

---

[11] *See also* 10 *Del. C.* § 5101 (providing "[g]enerally, a party for whom final judgment in any civil action, . . . is given in such action, shall recover, against the adverse party, costs of suit, to be awarded by the court.").

[12] *Donovan v. Delaware Water and Air Res. Comm'n*, 358 A.2d 717, 723 (Del. 1976) (quoting *Peyton v. William Peyton Corp.*, 8 A.2d 89 (Del. 1939)).

[13] 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2666 (4th ed. updated April 2023).

[14] *See, e.g.*, Super. Ct. Civ. R. 68 (explaining that if a party does not accept a timely offer of judgment made before trial, the party declining to accept the offer must pay the costs incurred after the offer was made when final judgment is less than the offer).

[15] Pl.'s Mot. at 3.

NGL opposes that part of LCT's application.[16]    According to NGL, LCT identifies no authority that justifies an exception to the general rule that the parties should equally share a special master's fees absent bad faith – particularly in a case, such as this, where the special master ruled in NGL's favor in more than one-half of the disputes.[17]

Generally, each party is required to pay his or her own attorneys' fees absent a statute that provides otherwise.[18]  Similarly, *pretrial* costs, which include payment of a special master's fee, should be treated no differently than attorneys' fees or other pretrial costs absent a statute or rule that reallocates responsibility for paying them.[19]  Moreover, any reallocation of a special master's fee, because of a party's alleged discovery misconduct, is best addressed through a Superior Court Civil Rule 37 application.[20]    In that way, the Court can better reallocate the responsibility for expense closer in time to the discovery dispute.

LCT contends that Delaware decisional law has not addressed whether the prevailing party may recover a special master's fee under Rule 54(d).    It further contends that a special master's proceeding is more akin to a trial proceeding, thus making the fee recoverable in the final judgment.  In support, LCT cites three federal cases as persuasive authority.    All three decisions included masters' fees in the awards but relied on Federal Rule of Civil Procedure 53(a) when doing so.[21]  That

---

[16] Def.'s Opp'n at 2–3.

[17] *Id.* at 2.

[18] *State v. Bancorp Bank*, 2023 WL 21331, at *17 (Del. Super. Jan. 3, 2023).

[19]*Id.*; *See also Dyncorp v. Underwriters at Lloyd's, London*, 2014 WL 4656393, at *2–3 (Del. Super. Sept. 18, 2014) (recognizing that any potential reallocation of a special discovery master's fee is properly addressed as a Superior Court Civil Rule 37 sanction).

[20] *Dyncorp*, 2014 WL 4656393, at *3.

[21] *See Ross v. M/Y ANDRES ARAS*, 2008 WL 11401765, at *1 (S.D. Fla. May 2, 2008) (requiring a defendant who lost at trial to pay the entire special master's fee as a court cost); *see also Aird v. Ford Motor Co.*, 86 F.3d 216, 222 (D.C. Cir. 1996), *amended* (Aug. 12, 1996) (recognizing that the trial court did not abuse its discretion when allocating a special master's fee under FRCP 53(a)); *Bradley Grp., Inc. v. Ohio State Life Ins. Co.*, 1997 WL 22661, at *1 (E.D. Pa. Jan. 17, 1997)

federal rule provides broad discretion in allocating masters' fees in the federal system but is unhelpful in Delaware because Delaware Superior Court Civil Rules omit Rule 53.[22]

On balance, LCT's reliance on the fact that no Delaware case has addressed the issue is not persuasive. Delaware decisional law has likely not squarely addressed the matter because a special master's fee falls so directly in the category of pretrial expenses. Moreover, Superior Court decisions that have considered reallocating such expenses have done so only during the discovery phase pursuant to a Superior Court Civil Rule 37 motion. Finally, there is no evidence of record that NGL acted in bad faith or abused the discovery process. To the contrary, the record demonstrates that NGL prevailed in more than one-half of the discovery disputes.[23] Accordingly, the Court denies LCT's application to include its portion of the special master's fee in the final judgment.

## B. Mediator's Fee

Similarly, LCT seeks to include its one-half of the mediator's fee as part of the final judgment.[24] As with other pretrial expenses, the general rule is that each party should bear an equal portion of the fee. Delaware courts have described themselves as hesitant to deviate from the practice.[25]

---

(allocating responsibility for the entirety of the master's fee to the non-prevailing party, also pursuant to FRCP 53(a)).

[22] *See* Super Ct. Civ. R. 53 (indicating that the rule is "omitted").

[23] Special Disc. Master's Order No. 1 (May 10, 2017) (D.I. 141) [hereinafter the Court cites the remaining Special Master's Orders and Opinions as docket entries]; (D.I. 142); (D.I. 208); (D.I. 214); (D.I. 220); (D.I. 227); (D.I. 244).

[24] Pl.'s Mot. at 3–4.

[25] *Kuratle Contracting, Inc. v. Linden Green Condo., Ass'n*, 2014 WL 5391291, at *10 (Del. Super. Oct. 22, 2014).

In support of LCT's claim for these expenses, it cites Superior Court decisions in *Cook v. Murphy*,[26] *West v. Maxwell*,[27] and *Immedient Corp. v. Healthtrio, Inc.*[28] These three decisions cite "court discretion" when including mediation fees in the final judgment. For the reasons that follow, they are not helpful in LCT's case, however.

First, the court reasoned in *Cook* that a court should exercise discretion to award a defendant a portion of a mediator's fee as a trial cost if the plaintiff negotiated *in good faith*, the fee was reasonable, and the defendant prevailed.[29] At the outset, a proper exercise of discretion to reallocate the responsibility to pay a mediator's fee would seem to call for the opposite – *bad faith* negotiation. Furthermore, the *Cook* decision relies on a single Superior Court decision that awarded mediation fees because there had been a Rule 68 offer of judgment.[30] Here, there was no offer of judgment and the prevailing party was not the defendant.

Next, the *West* decision addressed a motion for new trial and a prevailing party's application for costs.[31] There, the court included a mediator's fee as part of the final judgment but merely explained that "[u]nder the circumstances, the court will exercise its discretion in favor of [the] application."[32]

Finally, in *Immedient Corp.,* the court also did not explain why it awarded mediation costs to the prevailing plaintiff. It simply recognized that the plaintiff prevailed and that the "Court will award [p]laintiff this amount."[33]

---

[26] 2013 WL 6916941 (Del. Super. Nov. 26, 2013), *aff'd*, 99 A.3d 226, 2014 WL 3764177 (Del. July 30, 2014) (TABLE).
[27] 2001 WL 789654 (Del. Super. June 29, 2001).
[28] 2007 WL 1982838 (Del. Super. July 6, 2007).
[29] *Cooke*, 2013 WL 6916941, at *6.
[30] *Id.*
[31] *West*, 2001 WL 789654, at *7.
[32] *Id.*
[33] *Immedient Corp.*, 2007 WL 1982838, at *1.

7

In this case, the Court declines to include this expense in the judgment after balancing the three decisions LCT cites against the larger number of cases that hold that a court should not tax a mediator's fee as trial costs, absent some abuse of the process by the non-prevailing party.[34] While the Court maintains considerable discretion when deciding what costs to include in a final judgment, the distinction between pretrial expenses and trial costs guide its decision. Moreover, the record in this case contains no evidence that NGL refused to participate in the mediation in good faith. As a result, the Court declines to include LCT's portion of the mediator's fee in the final judgment.

### C. Courtroom Technology Fees

Technology costs fall generally within the category of costs that are incidental and necessary to support trial presentations, particularly in a complex commercial case.[35] LCT seeks to include two separate technology support fees in the judgment: $24,497.03 for technology fees incurred to support its efforts before and during the first trial; and $61,445.30 for technology fees incurred to support its efforts before and during the second trial.[36]

LCT was largely unsuccessful in the first trial because the Delaware Supreme Court ruled predominantly against LCT when it remanded the case to the Superior Court. While the Court has the discretion to include a *prior* trial's technology fees

---

[34] *See, e.g.*, *Lierenz v. McCall*, 2015 WL 1733634, at *1 (Del. Super. Apr. 10, 2015) (recognizing that the parties generally split a mediator's fee equally); *see also Reinke v. Furbush*, 2011 WL 7063367, at *2 (Del. Super. Dec. 1, 2011) (declining to disturb the general rule that both parties split mediator fees equally upon an application for trial costs); *Foley v. Elkton Plaza Assocs., LLC*, 2007 WL 959521, at *1 (Del. Super. Mar. 30, 2007) (requiring both parties to equally share the mediator's fee in accordance with the general rule).

[35] *See In re Bracket Holding Corp. Litig.*, 2020 WL 764148, at *14 (Del. Super. Feb. 7, 2020) (recognizing that, in complex litigation, technology support expenses are reasonable while declining to permit recovery for technology services other than those provided during trial presentations).

[36] Pl.'s Mot. at 2.

8

in a final judgment entered after a retrial, it declines to do so under the circumstances of this case because LCT did not prevail at the first trial. While the first trial's technology fees were necessary and likely reasonably incurred, they are more aptly considered pretrial expenses and not subject to Rule 54(d) recovery.

Technology fees incurred during trial presentations at the second trial, however, will be included in the final judgment. The provider's invoice demonstrates that LCT incurred a portion of the $61,445.30 for pretrial preparation, though. Here, LCT is due costs incurred for trial presentations only.[37] Those costs include the 108.5 hours spent by the provider to support LCT's trial presentations from opening statements through closing arguments.[38] Because NGL does not challenge the reasonableness of the provider's hourly rate, these 108.5 hours translate to $35,262.50 in technology costs due LCT in the final judgment.

## III.    INTEREST

LCT seeks (1) prejudgment interest as part of the award, and (2) post-judgment interest on the award. As to LCT's application for prejudgment interest, the parties dispute whether the Court should suspend the accrual of interest at times because LCT delayed bringing the matter to trial. As to LCT's application for post-judgment interest, the Court must decide whether to include prejudgment interest as part of the judgment for purposes of calculating the *per diem* amount.

### A. Prejudgment Interest

LCT seeks to add prejudgment interest to its award at a rate and in an amount itemized in the schedule it attaches to its application.[39] NGL does not contest LCT's calculations but contends that the Court should toll interest at times between when

---

[37] *Id.* at 13.
[38] Pl.'s Mot., Ex. D.
[39] Pl.'s Mot., Ex. J.

NGL's obligation arose and when the Court entered judgment on the February 2023 verdict.

A prevailing plaintiff is due prejudgment interest as a matter of right.[40] Trial courts nevertheless maintain the discretion to remove time from the calculation if the plaintiff delays prosecuting the case.[41] Generally speaking, only when the delay reaches the "inordinate" may the Court consider the parties' actions, apportion fault for the delay, and remove segments from the prejudgment interest calculation.[42]

The standard set in *Getty Oil Co. v. Catalytic, Inc.*[43] governs the inquiry. In *Getty Oil*, the court explained what type of delay supports suspending the accrual of prejudgment interest. To toll interest, the delay must result from (1) the plaintiff's unreasonable failure to prosecute the case, or (2) actions taken by the plaintiff that have "absolutely no reasonable relation to the prosecution of the case."[44] While there need be no bad faith on the plaintiff's part for purposes of attribution, the term intractableness, as used in *Getty Oil*, is as good as any to capture the nature of the delay necessary to attribute fault to a plaintiff.[45] With that in mind, the *Getty Oil* standard and the court's discussion in that case distill the inquiry to the following – did LCT unreasonably prosecute or unreasonably fail to prosecute its claim at various pretrial stages?

---

[40] *Moskowitz v. Mayor & Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978); *see generally Prejudgment Interest*, Black's Law Dictionary (11th ed. 2019) (defining it as "[s]tatutorily prescribed interest accrued . . . from the date of the loss . . . up to the date that judgment is entered.").

[41] *Moskowitz*, 391 A.2d at 211.

[42] *Id.*

[43] 509 A.2d 1123, 1126 (Del. Super. 1986).

[44] *Id.*

[45] *Id.*

NGL contends that there are seven pre-trial segments where LCT's conduct justify suspending the accrual of prejudgment interest.[46]  In support, it identifies twenty-seven docket entries that it contends demonstrate LCT's fault for the various delays.[47]  LCT counters, in its own right, by citing fourteen docket entries to support that (1) the delays in some segments should be excused, (2) the cause for others were incidental to the ebbs and flows of litigation, and (3) NGL caused the rest.[48]

After an oral argument on the issue, the Court performed a granular review of the competing docket entries.  As to all seven segments, NGL fails to demonstrate that LCT unreasonably prosecuted or unreasonably failed to prosecute the case.  To the contrary, the record demonstrates that this case has been hard-fought on both sides and that LCT did not unreasonably cause any of the seven segments of pre-trial delay.

To provide further explanation, the Court will group the segments into several categories.  NGL challenges, for instance, some delays caused by scheduling accommodations that its counsel provided to LCT's counsel.  Here, no scheduling accommodation requests during this years-long litigation rose to the level of unreasonable action or inaction.  Such professional accommodations are the norm in Delaware practice and the accommodations in this case were no exception.  Likewise, LCT bears no fault for the delays caused by Court docketing conflicts,

---

[46] The periods in chronological order include: (1) LCT's requested trial continuance because it changed counsel; (2) NGL's requested trial continuance because of LCT's alleged improper discovery conduct; (3) the time spent in the first trial because LCT improperly advanced a "unitary theory of damages"; (4) the period needed to adjudicate Rule 50 Motions after the first trial; (5) an extension in the Delaware Supreme Court's briefing schedule to accommodate LCT's counsel's vacation; (6) post-remand delays that NGL contends LCT caused; and (7) LCT's requested continuance because its counsel had health concerns at the end of 2022 that resulted in a several month trial continuance until February 2023.  Def.'s Opp'n, Ex. C.

[47] See Def.'s Opp'n at 3–9 (citing D.I.s 208, 338, 343, 352, 441, 454, 463, 469, 472, 478–83, 497, 501, 508–11, 513, 515, 538, 546, 572, and Supr. Ct. D.I. 5).

[48] Hr'g Tr., May 2, 2023 (D.I. 637) (relying on D.I.s 312, 316, 317, 401, 454, 468, 477, 502, 503, 504, 506, 508, 536, and Supr. Ct. D.I. 5).

delays necessitated by a judicial officer's other assignments, or the pandemic which itself halted jury trials for more than a year.[49]  Furthermore, although NGL prevailed in many discovery disputes, the Court gleans no intractableness on LCT's part from the record.  Rather, the record reveals aggressive discovery positions advanced by both parties that the Court resolved with the help of a special master.   No position appeared to be in bad faith.  Nor did any of the delays approach the inordinate.

Likewise,  the Court cannot determine why LCT changed counsel during one of the challenged segments – nor should the record demonstrate that.   Although the Court must view each segment separately, it must also consider the totality of the circumstances *relevant to each segment* when determining if it should suspend the running of interest.   Here, the delay related to the substitution of counsel is superimposed on court docket-required delays.   For that reason, it would be inappropriate to attribute the delay to LCT under the *Getty Oil* standard.

When the Court considers the circumstances surrounding each of the seven segments, the delays were (1) attributable to both parties, (2) caused by matters outside the parties' control such as the pandemic, or (3) incident to the reasonable ebbs and flows of litigation that litigants should expect in such a hard-fought case. Accordingly, prejudgment interest accumulating from July 1, 2014, through the date of the jury verdict, will be included in the final judgment.

## B.  Post-Judgment Interest

LCT also seeks post-judgment interest pursuant to 6 *Del. C.* § 2301(a).[50]   As in the case of LCT's claim for prejudgment interest, the parties agree that the

---

[49] *See Bishop v. Progressive Direct Ins. Co.*, 2019 WL 2009331, at *5–7 (Del. Super. May 3, 2019) (refusing to toll interest against a plaintiff for delays caused by the business and priorities of the court);  *see also Halaszi v. Wal-Mart Stores E. LP*, 2023 WL 2980454, at *4 (Del. Super. Apr. 13, 2023) (concluding that the court did not need to suspend the accrual of interest for delays caused by the pandemic because such delays are akin to delays caused by the court's calendar).
[50] *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 979 (Del. 2021).

appropriate rate is fixed by the Federal Discount Rate at the time of judgment plus five percent.[51] Here, they dispute whether the Court should award interest based upon the principal judgment amount or apply the rate to the principal judgment amount *and* accumulated prejudgment interest.

Important shorthand phrases for this discussion are "simple interest" and "compound interest." Simple interest is "[i]nterest paid on the *principal* only and not on accumulated interest."[52] Compound interest, on the other hand, is "[i]nterest paid on *both* the principal and the *previously accumulated* interest."[53] Compound interest can be compound*ed* at different intervals such as annually, quarterly, monthly, or on a single occasion.

LCT contends that the Court should add compound interest to the award. If the Court accepts that position, the interest will be compounded on a single occasion. In response, NGL urges the Court to apply the general rule and award simple interest.

The general rule in Delaware is that both prejudgment and post-judgment interest should be calculated as simple interest.[54] When discussing this general rule, Delaware courts recognize that compound interest is "disfavored."[55] Moreover, there is no practical distinction between including compound interest, prejudgment, and adding compound interest, post-judgment.[56]

---

[51] 6 *Del. C.* § 2301(a).

[52] *Simple Interest*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

[53] *Compound Interest*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

[54] *Rehoboth Marketplace Assoc. v. State*, 625 A.2d 279, 1993 WL 191465, at *1 (Del. Apr. 26, 1993) (TABLE).

[55] *See, e.g.*, *Gotham Partners L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002) (recognizing that Delaware courts traditionally disfavor compound interest); *Weinberger v. UOP, Inc.*, 517 A.2d 653, 657 (Del. Ch. 1986) (recognizing Delaware law disfavors compound interest); *see also Rehoboth Marketplace Assoc.,* 1993 WL 191465, at *1 (recognizing that Delaware law does not permit compound interest on awards and that including prejudgment interest in the post-judgment calculation is an award of compound interest).

[56] *Stone & Co., Inc. v. Silverstein*, No. 298, 1998, ¶ 18 (Del. Apr. 1, 1999) (ORDER).

Three relatively recent Delaware Supreme Court decisions provide mandatory authority that recognizes the presumption in favor of awarding simple interest. The parties did not cite, nor did the Court locate, any contrary mandatory authority. Two of the three decisions address appeals from the Court of Chancery. The third addresses an appeal from the Superior Court.

First, in *Summa Corp. v. Trans World Airlines*,[57] the Delaware Supreme Court recognized that Delaware courts traditionally disfavor the use of compound interest.[58] Relying on that general rule, the Court found no error when the Court of Chancery declined to award compound interest.[59] Second, in *Stone & Co., Inc. v. Silverstein*, the Delaware Supreme Court considered whether "interest on interest" should be the exception or the norm under Delaware law.[60] There, our Supreme Court rejected what the plaintiffs referred to as a "recent trend" in awarding compound interest.[61] Nevertheless, it held that the *Court of Chancery* maintains the discretion to award compound interest if it cites an explicit reason for doing so.[62] Third, the Supreme Court examined an appeal of a Superior Court decision in *Rehoboth Marketplace Associates v. State of Delaware*.[63] There, the Court held that the Superior Court had no discretion to award compound interest.[64] It held that "compound interest on awards is not permitted under Delaware Law" in a Superior

---

[57] 540 A.2d 403 (Del. 1988).

[58] *Id.* at 410

[59] *Id.*

[60] *See Stone*, No. 298, 1998 ¶ 20 (providing that "[n]otwithstanding the discretion accorded to the Court of Chancery in the fixing of interest, an award of 'interest on interest' is the exception under settled Delaware law.").

[61] *Id.* ¶ 19. The "recent trend" advanced by the plaintiffs in *Stone* relied primarily on appraisal cases, however. *Id.* As the Court explained in *Stone*, the appraisal statute, 8 *Del. C.* § 262(i), statutorily provides for compound interest. *Id.*

[62] *Id.* ¶ 20.

[63] 1993 WL 191465, at *1.

[64] *Id.*

14

Court action at law.[65]   In response to these three decisions, LCT cites no mandatory authority that provides a court of law the discretion to do what it requests.

Apart from disfavoring compound interest generally, the aforementioned cases separately recognize that the Court of Chancery retains the discretion to award compound interest if specific circumstances warrant it.[66]   The decisions recognize that the discretion to do so flows from the recognition that Chancery has the discretion to award prejudgment interest at a rate higher than the legal rate provided by Section 2301.[67]   Stated differently, Chancery's equitable power to award prejudgment or post-judgment interest (in the absence of an enforceable contractual agreement to the contrary) at a rate different than Section 2301(a)'s rate permits it to award compound interest if the circumstances support it.[68]

The Court acknowledges a recent Superior Court decision cited by LCT that awarded compound interest, post-judgment.[69]   Other decisions of this Court have declined to award compound interest but have nevertheless assumed the discretion to do so in special circumstances.[70]   There may be excellent arguments and a trend,

---

[65] *Id.*

[66] *Stone*, No. 298, 1998 ¶ 20; *Brandin v. Gottlieb*, 2000 WL 1005954, at *30 (Del. Ch. July 13, 2000).

[67] *Gotham*, 817 A.2d at 173; *See Summa Corp.*, 540 A.2d at 409 (recognizing that a court of equity has broad discretion when fixing the prejudgment interest *rate* differently than the statutorily provided legal rate); s*ee also Brandin*, 2000 WL 1005954, at *29–30 (explaining Chancery's equitable discretion to award pre-judgment interest at a rate higher than the legal statutory rate).

[68] *Stone,* No. 298, 1998 ¶ 20.

[69] *See Fortis Advisors, LLC v. Dematic Corp.*, 2023 WL 2967781, at *2 (Del. Super. Apr. 13, 2023) (relying on more recent Court of Chancery decisions and federal cases when awarding compound interest in a case at law).

[70] *See, e.g.*, *Pro. Investigation & Consulting Agency, Inc. v. Hewlett-Packard Co.*, 2015 WL 1417329, at *11 (Del. Super. Mar. 23, 2015) (awarding simple post-judgment interest while recognizing only that "Delaware law favors simple interest"); *see also O'Riley v. Rogers*, 2013 WL 4506971, at *1 (Del. Super. Aug. 14, 2013) (excluding prejudgment interest from the post-judgment calculation because no statute authorized it and the case had "no special circumstances"); *c.f, Balooshi v. GVP Glob. Corp.*, 2022 WL 576819, at *14 (Del. Super. Feb. 25, 2022), *aff'd*, 285 A.3d 839, 2022 WL 5052721 (Del. Oct. 5, 2022) (TABLE) (recognizing that there is no discretion

15

based upon commercial expectations, to make compound interest the default.[71]  After recognizing the importance of such commercial expectations, however, the Court of Chancery persuasively observed the following in *Brandin v. Gottlieb* when examining a claim *at law*:

> [h]aving for so long been construed as providing for a simple interest calculation, 6 *Del. C.* § 2301 should not be reinterpreted by the judiciary as calling for compound interest.  Any reinterpretation of the statute at this stage should come from the legitimate authority, the General Assembly.[72]

Based on this and like reasoning, a change in the common law that would permit the Superior Court to award compound interest in these circumstances may be appropriate, but mandatory authority provides only the Court of Chancery the discretion to do so.[73]   As a result, the Court declines to stray from the default – simple interest.

Alternatively, if the Court were to have the discretion to award compound interest, post-judgment, it would nevertheless award simple interest in this case.  Granted, compound interest may be appropriate at times to make a plaintiff whole when a defendant wrongfully withholds payment to interfere with a plaintiff's recovery.[74]  Under such a circumstance, and no doubt others, compound interest,

---

on the issue, and that unless the parties agree otherwise, 6 *Del. C*. § 2301 requires simple interest at a fixed rate).

[71] *Brandin,* 2000 WL 1005954, at *28.

[72] *Id.* at *29.  LCT's claim in quasi-contract is one at law.  *See Bellanca Corp. v. Bellanca*, 169 A.2d 620, 623 (Del. 1961) (describing a quasi-contract claim as one permitted by law); *see also Caldera Properties-Lewes/Rehoboth VII, LLC v. Ridings Dev., LLC*, 2009 WL 2231716, at *31 (Del. Super. May 29, 2009), *aff'd,* 998 A.2d 851, 2010 WL 2431628 (Del. June 17, 2010) (TABLE) (recognizing a *quantum meruit* claim as one wherein principles of law impose a legal relationship).

[73]*See Brandin,* 2000 WL 1005954, at *29–30 (awarding interest on interest because equity allowed full compensation); *CertiSign Holding, Inc. v. Kulikovsky*, 2018 WL 2938311, at *30 (Del. Ch. June 7, 2018) (granting interest on interest because the nature of the fiduciary breach justified the award).

[74] *Brandin,* 2000 WL 1005954, at *30.  Of note, LCT submitted the prejudgment interest schedule in its application and NGL conceded its appropriateness (absent its tolling arguments).  For that

prejudgment or post-judgment, could be an important tool to counterbalance a defendant's improper pre-trial litigation tactics or post-judgment execution-avoidance efforts.[75]

Here, when examining NGL's conduct using the same benchmark applied to LCT's conduct in the prejudgment interest setting, NGL did nothing to unreasonably delay the case. Namely, NGL caused LCT no inordinate delay in recovery and demonstrated no intractableness. Given the absence of such conduct over the course of the litigation to date, no inference that NGL will become intractable, post-judgment, is appropriate. Accordingly, the Court alternatively declines to stray from the general rule. Simple interest will apply post-judgment.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS, in part**, LCT's application for costs, prejudgment interest, and post-judgment interest. The parties shall confer and submit a form of final order to the Court within ten days that (1) includes all uncontested costs sought in LCT's application, (2) the contested costs awarded pursuant to this decision, and (3) prejudgment and post-judgment interest as qualified above.

/s/ Jeffrey J Clark<br>
Resident Judge

File & ServeXpress

---

reason, the Court provides no comment on LCT's prejudgment interest calculation because the parties stipulate to its accuracy.

[75] *Id.*